UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DON MASHAK,                                     CIVIL NO. 11-473 (JRT/JSM)

      Plaintiff,

v.                                              <u>REPORT AND RECOMMENDATION</u>

                           and

                          <u>ORDER</u>

STATE OF MINNESOTA,
MINNESOTA SUPREME COURT,
MARY YUNKER,
TIMOTHY R. BLOOMQUIST,
DIANA LONGRIE,
LEE WOLFGRAM,
DANNETTE MEEKS-HULL,
MICHAEL HULL,
JOHN DOE and
JANE DOE,

      Defendants.

The above matter came on before the undersigned upon the Motion to Dismiss of State Defendants [Docket No. 15], Don Mashak's Motion for Writ of Mandamus [Docket No. 23], Don Mashak's Motion for Default and Summary Judgment [Docket No. 56], Defendant Lee Wolfgram's Motion to Dismiss [Docket No. 75], and Don Mashak's Motion to Amend Complaint [Docket No. 115].

Plaintiff Don Mashak appeared <u>pro se</u>.[1]  John S. Garry appeared on behalf of the State of Minnesota, Minnesota Supreme Court, Mary Yunker and Timothy R. Bloomquist.   Amber Thompson Fasching appeared on behalf of defendant Lee

---

[1]  This suit was commenced by plaintiffs Don Mashak and First National Repossessors, Inc. First National Repossessors, Inc. was dismissed for failure to obtain legal representation.  <u>See</u> Order dated June 16, 2011 [Docket No. 69], adopting Report and Recommendation dated May 4, 2011 [Docket No. 44].

Wolfgram.  No appearances were made on behalf of defendants Diana Longrie, Dannette Meeks-Hull or Michael Hull.

The Motion to Dismiss of State Defendants [Docket No. 15], Don Mashak's Motion for Writ of Mandamus [Docket No. 23], Don Mashak's Motion for Default and Summary Judgment [Docket No. 56], and Defendant Lee Wolfgram's Motion to Dismiss [Docket No. 75], have been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).[2]

## I.   BACKGROUND

Plaintiff Don Mashak's ("Mashak") alleged in his Complaint that based on his rights under the First Amendment to petition the government for redress of grievances, he has pursued reform of the Minnesota judiciary by seeking to give testimony and evidence to the Minnesota House and Senate Judiciary Committees.  See Complaint [Docket No. 1], ¶¶ 11-13.  He has also exercised his First Amendment right to petition the government for redress of grievances by demanding financial information from various governmental bodies to determine why his property and other taxes were increasing so dramatically.  Id., ¶ 14.  Mashak claimed that in retaliation for exercising his First Amendment right to petition the government for redress of grievances, the State of Minnesota and the Minnesota Supreme Court unlawfully retaliated against him and obstructed justice by improperly handling unrelated litigation against defendants Dannette Meeks-Hull ("Meeks-Hull") and Michael Hull ("Hull").  Id., ¶¶ 15-17.

---

[2]   While normally the ruling on a motion to amend would be issued in a separate order, given that the issues in the motion to amend the Complaint are intertwined with the motions to dismiss, the Court has decided to address all of the motions in this decision.

Mashak described the facts related to this unrelated litigation as follows: While he was on vacation from work, Meeks-Hull and Hull, former employees of Mashak's company, First National Repossessors, stole company property and files, destroyed property and records of the business, and embezzled money.  Id., ¶¶ 18, 112-154. Additionally, despite a non-compete agreement, Meeks went to work for a competitor repossession company, and Meeks-Hull and Hull sold a car upon which Mashak held a second lien.  Id., ¶¶ 169-190.  In January 2008, Mashak commenced a small claims court suit against Meeks-Hull and Hull.  Id., ¶ 191.  Upon hearing that she was going to be served papers for a civil action, Meeks-Hull made false sexual allegations and allegations of harassment against Mashak, and served a harassment restraining order on Mashak, which was obtained by Meeks-Hull based on false testimony and evidence. Id., ¶¶ 19, 194, 195.  Mashak claimed that the false allegations by Meeks-Hull and Hull regarding Mashak have been used by the State of Minnesota and Minnesota courts to demonize and discredit him and that their actions amount to unlawful punishment and retaliation for his attempts to exercise his First Amendment rights and seek reform of the Minnesota Judiciary.  Id., ¶¶ 21, 23-25.

Specifically, Mashak alleged that defendant Sherburne County District Judge Mary Yunker ("Judge Yunker") presided over his state action against Hull and Meeks-Hull and showed "insurmountable bias" against him, (id., ¶ 26), as evidenced by the following:

- Although Hull and Meeks-Hull did not show up to the July 9, 2010 pretrial hearing, Judge Yunker did not find in Mashak's favor.  Id., ¶¶ 28, 71.

- Judge Yunker failed to issue an amended scheduling order until months after the July 9, 2010 pretrial hearing, which allowed Hull and Meeks-Hull to not answer outstanding discovery

3

because they did not know the discovery deadline had been extended. Id., ¶¶ 29, 30.

- From July 9, 2010 through early September 2010, Judge Yunker did not return Mashak's attorney's calls and written communications concerning the amended scheduling order and motions to compel discovery, and refused to allow any hearing to take place from September 30, 2010 through December 29, 2010. Id., ¶¶ 31, 33, 74.

- Judge Yunker prevented Mashak from bringing motions and from getting evidence on the record, including discovery motions. Id., ¶¶ 33-34, 36.

- Judge Yunker canceled a September 16, 2010 hearing which prevented Mashak from compelling discovery from Hull and Meeks-Hull and from amending his complaint. Id., ¶¶ 77, 82.

- Judge Yunker hid in her chambers the court file containing all of the worst evidence against Hull and Meeks-Hull so that the demonization and discrediting of Mashak would continue and so that Mashak would not have access to this information. Id., ¶ 35.

- Once Judge Yunker's "attempts to fix the case were successful," she held two hearings between January 25, 2011 and February 2, 2011. Id., ¶ 37.

- Judge Yunker and Sherburne County failed to provide him with an accommodation under the Americans with Disabilities Act ("ADA"). Id., ¶ 38.

Mashak alleged that defendant state court Judge Timothy Bloomquist ("Judge Bloomquist") aided and abetted the conspiracy to obstruct justice by refusing to intervene in Judge Yunker's refusal to issue a timely scheduling order, stating he had no authority to discuss the timeliness of providing the amended scheduling order to the parties. Id., ¶¶ 39, 40.

Because the Minnesota Supreme Court is in charge of lawyer discipline, Mashak claimed that lawyers are more loyal to judges than to their clients. Id., ¶¶ 41, 42. Therefore, when a Minnesota judge "telegraphs" to an attorney the desired result they

want, the attorney is obliged to deliver, which gives judges the ability to "fix" cases. Id., ¶¶ 43-45, 48. Attorneys accomplish this by keeping evidence out of the official record and by "accidently" not following the rules (i.e., forgetting to file a motion or filing a motion late). Id., ¶¶ 46, 47.

According to Mashak, his first attorney, defendant Dianna Longrie ("Longrie"), aided and abetted in the conspiracy to obstruct justice in a myriad of ways including: failing to enter evidence which included the results of a polygraph test taken by Mashak; failing to correctly cross-examine Hull and Meeks-Hull; notifying Mashak a day before a court hearing that she could not attend; misinforming Mashak of the documents needed to meet the requirements for the collection of a deficiency; failing to depose defendants Meeks and Meeks-Hull; failing to send discovery to Meeks and Meeks-Hull; failing to return Mashak's calls; and failing to inform Mashak that defendants Meeks and Meeks-Hull had brought a Rule 11 motion. Id., ¶¶ 49-57.

On October 28, 2010, Mashak retained defendant Lee Wolfgram ("Wolfgram") as his attorney to represent him in the matter against Hull and Meeks-Hull before Judge Yunker.[3] Id., ¶ 87. Mashak advised Wolfgram on multiple occasions that Judge Yunker would not extend the December 17, 2010 deadline for dispositive motions and discovery. Id., ¶ 88. Mashak also told Wolfgram to notice the depositions of defendants and other parties of interest immediately and to subpoena sources of derogatory information on the internet. Id., ¶¶ 89, 90. Wolfgram failed to subpoena these sources. Id., ¶ 92. In addition, Mashak told Wolfgram to submit an amended complaint, however, Wolfgram indicated that Judge Yunker had refused to set a hearing. Id., ¶ 91.

---

[3]    Between Longrie and Wolfgram, apparently Mashak was represented by attorney Joe O'Brien and then attorney Mark Olson. See Complaint, ¶¶ 59-64, 79-81, 84, 85.

Wolfgram told Mashak that he was going to mail the amended complaint to Judge Yunker and that she would rule favorably without a hearing, but later communicated that a hearing was required. Id., ¶¶ 93, 94. Wolfgram noticed the deposition of Meeks and Meeks-Hull approximately ten days before the December 17, 2010 deadline for discovery. Id., ¶ 95. Meeks and Meeks-Hull refused to submit to a deposition before the discovery deadline, and Judge Yunker refused to hold a teleconference to resolve the impasse. Id., ¶¶ 95-97. Wolfgram assured Mashak that Judge Yunker would extend the deadline for discovery. Id., ¶ 98. However, at a hearing on December 29, 2010, Judge Yunker denied Mashak's request for depositions, the request to amend the complaint, and refused to extend the discovery deadline. Id., ¶ 99.

In Count One of the Complaint, titled "Unlawful Punishment and Retaliation for Plaintiff Mashak exercising Constitutional 1st Amendment Right to Petition the Government for Redress of Grievances," Mashak alleged that the State of Minnesota and Minnesota Courts retaliated and punished him for exercising his First Amendment rights to petition the Government for redress of grievances by conspiring to demonize and discredit him through various acts including aiding and abetting Hull and Meeks-Hull in perpetrating their false allegations against him; denying him the opportunity to clear his name and to engage in legitimate litigation; and denying him depositions, subpoenas, discovery and the opportunity to amend his complaint. Id., ¶¶ 204-06. Mashak seeks $10,000,000 in damages based on this Count. Id., ¶ 209.

In Count Two of Complaint, titled "Racketeering, Influence and Corrupt Organization," Mashak alleged that the Minnesota Legislature unconstitutionally delegated its authority for the oversight of the Minnesota Judiciary to the Minnesota Judiciary; the Minnesota Supreme Court has written laws that make it legal for judges to

take bribes; as a result of the Minnesota Supreme Court's oversight over the licensing and discipline of Minnesota attorneys, Minnesota attorneys are more loyal to the judges they appear before than the clients they represent; the Minnesota Supreme Court and the legislature have written the rules for the Minnesota Board of Judicial Standards in such a way that the Board cannot speak to most of the issues of misconduct that rise to a criminal level except for transgressions involving trust funds, tardiness, untimely filings and being openly drunk on the bench; the Minnesota Supreme Court has written the rules in such a manner that the only recourse for a litigant is to appeal, and knowing that most persons do not have the knowledge nor the money to hire an attorney to do the appeal, most "fixed" cases will never be subject to scrutiny; these rules were written with the intent to be duplicitous and have allowed corruption in the Minnesota judiciary to become systemic; defendants have violated the judicial rules to wrongfully punish, demonize and discredit Mashak; and defendants have unfairly retaliated against Mashak for petitioning the government for the redress of grievances in a systematic criminal manner fully consistent with the types of criminal actions that RICO intended should be prosecuted.  Id., ¶¶ 211-222.  Mashak seeks $10,000,000 in damages based on this Count.  Id., ¶ 223.

In Count Three of the Complaint, titled "Obstruction of Justice," Mashak alleged all defendants worked to unlawfully obstruct justice.  Id., ¶ 225.  Defendants Hull and Meeks-Hull falsely made sex allegations when they were caught embezzling money and stealing property from Mashak, and the remainder of the defendants seized upon these false allegations as a way to unlawfully punish Mashak for exercising his constitutional right to petition the Government for redress of grievances.  Id., ¶¶ 226, 227.  Mashak claimed that the State of Minnesota and the Minnesota Supreme Court, through the

actions of defendants Yunker, Bloomquist, Wolfgram and Longrie, each acted to deny Mashak a full, fair, equitable, unbiased and just adjudication, which resulted in the obstruction of justice.  Id., ¶ 228.  Mashak seeks $10,000,000 in damages based on this Count.  Id., ¶ 229.

In Count Four of the Complaint, titled "Conspiracy to Obstruct Justice," Mashak asserted that all of the defendants acted to deny him a full, fair, equitable, unbiased and just adjudication of his original action, which resulted in obstructed justice.  Id., ¶ 231.  Mashak seeks $10,000,000 in damages based on this Count.  Id., ¶ 232.

In Count Five of the Complaint, titled "Cruel and Unusual Punishment," Mashak alleged that allowing him to believe justice was fairly administered, when it was being manipulated and "fixed," was cruel and unusual punishment.  Id., ¶ 234.  According to Mashak, this concept of law applies to this situation because it was the intent of defendants to punish him by demonizing and discrediting him for the "'undeclared yet true reality' that Political Dissent is punished by our Government."  Id., ¶ 235.  Mashak seeks $10,000,000 in damages based on this Count.  Id., ¶ 236.

In Count Six of the Complaint, titled "Theft by Swindle," Mashak alleged that Wolfgram and Longrie induced him to pay them money by falsely stating that they would represent him to the best of their ability, but instead participated in fixing his case against his best interests.  Id., ¶¶ 238, 239.  Similarly, the Minnesota courts wrongfully induced Mashak to pay them fees when the courts had no intent to provide him with impartial justice.  Id., ¶¶ 240, 241.  Mashak seeks $10,000,000 in damages based on this Count.  Id., ¶ 242.

In Count Seven of the Complaint, titled "Medical Expenses," Mashak set forth that Meeks-Hull and Meek's false allegations and the remaining defendants' attempts to

prevent the false allegations from being exposed have caused him psychological and physical distress in the form of "LEGAL ABUSE SYNDROME." Id., ¶ 244-245.  Mashak seeks $100,000 in medical expenses.  Id., ¶ 246.

In Count Eight of the Complaint, titled "Extortion," Mashak alleged that on two or more occasions, Wolfgram demanded that Mashak sign a document stating that he was satisfied with his representation or Wolfgram would quit as his attorney.  Id., ¶ 248.  This conduct constitutes extortion, as Wolfgram knew that Mashak would have to pay another attorney to familiarize themselves with the case.  Id., ¶¶ 249, 250.  Mashak seeks $10,000,000 in damages based on this Count.  Id., ¶ 251.

In Count Nine of the Complaint, titled "Intentional Infliction of Emotional Distress," Mashak alleged that Hull and Meeks-Hull made false sex allegations to third parties that Mashak had sexually harassed them, made improper sexual advances, and had told them he had sex with minors in the Philippines.  Id., ¶¶ 253, 254.  The remainder of the defendants terrorized Mashak by depriving him of the right to clear his name through the legal process.  Id., ¶ 255.  These actions were extreme, outrageous, intentional and reckless, and have caused Mashak emotional distress.  Id., ¶¶ 256-258.  Mashak seeks monetary damages in excess of $50,000 based on this Count.  Id., ¶ 258.

In Counts Ten through Seventeen of the Complaint, Mashak alleged claims of breach of fiduciary duty, tortious interference with business advantage, abuse of process, theft of trade secrets, intentional interference with contract, breach of contract, conversion, and breach of non-compete agreements against Hull and Meeks-Hull, and sought damages in excess of $50,000 for each claim.  Id., ¶¶ 261-308.  In addition, with respect to the abuse of process claim, Mashak asked for the vacation of the harassment proceeding brought by Meeks-Hull and expungement of the harassment order pursuant

to Minn. Stat. § 548.14.   Count Eighteen is claim for punitive damages against defendants.  Id., ¶¶ 309-312.

Following the filling and service of the Complaint, the Minnesota Supreme Court and Judges Yunker and Bloomquist ("State defendants") and Wolfgram brought motions to dismiss, Mashak brought a motion for writ of mandamus against the Minnesota Legislature and a motion for default and summary judgment against Meeks-Hull, Hull and Longrie.  Following his response to the State defendants and Wolfgram respective motions to dismiss, Mashak filed a motion to amend the complaint.

The Court first addresses the State defendants' and Wolfgram's motions to dismiss, and then Mashak's motions to amend the complaint, for a writ of mandamus, and for default and summary judgment against Meeks-Hull, Hull and Longrie.

## II.   STANDARD OF REVIEW

"[I]f a plaintiff lacks standing, [a] district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1)."   See Faibisch v. Univ. of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002).  A motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); see also Osborn v. United States., 918 F.2d 724, 729 n. 6 (8th Cir. 1990).  In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.  See Osborn, 918 F.2d at 729 n. 6.  The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.  See Titus, 4 F.3d at 593 (citing Eaton

v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n. 6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729 n. 6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3rd Cir. 1977)).

Here, depending on the claim, the state defendants brought both facial and factual challenges to jurisdiction, and the Court will consider the specific claims accordingly.

To withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Rather than summarize these principles, this Court quotes them verbatim.

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50. Following Twombly and consistent with Iqbal, the Eighth Circuit explained:

> While a plaintiff need not set forth "detailed factual allegations," Twombly, 127 S.Ct. at 1964, or "specific facts" that describe the evidence to be presented, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. Twombly, 127 S.Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," Bediako, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. Rios v. City of Del Rio, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

Gregory v. Dillard's, Inc. 565 F.3d 464, 473 (8th Cir. 2009).

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.   See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "'[t]hough pro se complaints are to be construed liberally, see Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), they still must allege sufficient facts to support the claims advanced.'" Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); see also Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "pro se complaint must contain specific facts supporting its conclusions.").

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915.  Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

Finally, pro se litigants, like attorneys, must comply with Rule 11 of the Federal Rules of Civil Procedure, which states in relevant part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and ….

Fed. R. Civ. P. 11.

The Court now applies these principles to the motions before this Court.

## III.   STATE DEFENDANTS' MOTION TO DISMISS

In their Motion to Dismiss, the State defendants argued that pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, this Court does not have subject matter jurisdiction over any claims against the State of Minnesota, the Minnesota Supreme Court, and Judge Yunker and Judge Bloomquist in their official capacities, pursuant to the Eleventh Amendment to the Constitution.  See Memorandum of Law in Support of Motion to Dismiss of State Defendants ("State Mem."), pp. 2-5.  As to Judge Yunker and Judge Bloomquist in their individual capacities, the State defendants argued that Mashak failed to allege any claim against them in their individual capacities and that

even if he had made such a claim, they are entitled to absolute immunity from damages based on their judicial acts, (id., pp. 6-8), and he cannot seek injunctive relief from them. Transcript of Hearing ("Tr.") [Docket No. 147], p. 12.

Mashak countered that Judge Yunker acted outside of her jurisdiction when she required him to provide confirmation of his disability under the ADA before she would delay hearings and when she disclosed his medical condition to defendants.  See Memorandum of Law in Opposition of Defendant State of Minnesota's Motion to Dismiss State [Docket No. 32], p. 5.  Mashak also asserted that Eleventh Amendment immunity is not applicable to claims brought under the ADA.  Id.  In addition, Mashak argued that there is no Eleventh Amendment immunity applicable to Judge Yunker and Judge Bloomquist in their individual capacities, he is entitled to injunctive relief against the state judges in their official capacities, including enjoining them from violating state law, and the doctrine of judicial immunity does not bar a claim for equitable relief.  Id., pp. 6-7, 13-15.

Mashak argued that it is clearly outside the jurisdiction of the State and the Minnesota Supreme Court to deny him the First Amendment right to petition the government for the redress of grievances and to instruct judges to "fix" court cases against him.  Id., pp. 7-9.  Mashak contended that Judge Yunker's act of asking Wolfgram to participate in fixing the case against Mashak, altering court records to make it look like Mashak's counsel had consented to cancelling a hearing date, refusing to reschedule the hearing after the discovery and dispositive motion deadline had passed, and denying an extension of such deadlines, were not a judicial acts and therefore, judicial immunity does not apply.  Id. at p. 11.  According to Mashak, Judge

Yunker's formation of a criminal association with Wolfgram and his other attorneys to fix his case amounts to a RICO violation that is not entitled to immunity. Id., p. 13.

Mashak took issue with the State defendants' assertion that he did not sue the judges in their individual capacities and noted any such defect could be easily cured by an amendment. Id., p. 17. It was Mashak's position that the criminal conspiracy alleged in the Complaint places this case within the jurisdiction of this Court and that the founding fathers did not intend that Eleventh Amendment immunity to extend beyond suits between states and citizens of another state or citizens of a foreign state. Id., pp. 18-19.

In reply, the State defendants argued that allegations of a conspiracy cannot overcome judicial immunity. See Reply Memorandum of Law in Support of Motion to Dismiss, pp. 1-2. As to the ADA claim, the state defendants contended that Mashak raised no such claim, and in the event that he did, he failed to allege an adequate claim to survive a motion to dismiss. Id., p. 2. The State defendants maintained that Mashak has not alleged any claims for injunctive relief against the State judges and even if he had, such relief is not allowed where no declaratory decree was violated and there was no claim that declaratory relief was unavailable. Id., pp. 2-3. Finally, the State defendants asserted that the Eleventh Amendment bars a federal court from deciding claims that state officials have violated state law, even if such claims are pendent to federal claims. Id., p. 3 n. 1.

### A.   Claims Against the State of Minnesota and the Minnesota Supreme Court

The Eleventh Amendment states, "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State."   Under the Eleventh Amendment, federal courts lack subject matter jurisdiction over a claim against a state for damages when that state has not consented to the suit.  See Kimmel v. Florida Bd. of Regents, 528 U.S. 62, 72 (2000); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 64-65 (1996).  When a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction.  Seminole Tribe, 517 U.S. at 64-65.

Pursuant to 42 U.S.C. § 1983, an individual may "vindicate rights conferred by the Constitution or laws of the United States."  Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000); see also Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992), cert. denied 506 U.S. 1081 ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.") (citing Thomas v. Shipka, 818 F.2d 496, 499 (6th Cir. 1987) ("where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violation"), vacated on other grounds by 488 U.S. 1036 (1989); Hunt v. Robeson County Dept. of Social Serv., 816 F.2d 150 (4th Cir. 1987); Morris v. Metropolitan Area Transit Auth., 702 F.2d 1037 (D.C. Cir. 1983)).

Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979).  Minnesota has not waived its immunity from § 1983 claims, (Phillips v. Minnesota State Univ., Civ. No. 09-1659 (DSD/FLN), 2009 WL 5103233 *3 (D. Minn. 2009)), nor has the State of Minnesota consented to suit.  See DeGidio v. Perpich, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (recognizing that the State of Minnesota's limited waiver of sovereign immunity from tort actions in state court is not a waiver of Eleventh Amendment immunity from suit in federal court

for federal constitutional claims).   Likewise, Minnesota state courts possess Eleventh

Amendment immunity from a suit under § 1983.   Collins v. Dakota County Dist. Court,

No. 11-2411, 435 Fed. Appx. 581, 2011 WL 4991623 at *1 (8th Cir. Oct. 20, 2011)

(citing Harris v. Mo. Court of Appeals, 787 F.2d 427, 429 (8th Cir. 1986)).

Based on the Eleventh Amendment, this Court concludes that Counts One,

Two,[4] Three, Four[5] and Five[6] of the Complaint should be dismissed as to the State of

Minnesota and the Minnesota Supreme Court for a lack subject matter jurisdiction.   The

remaining substantive claims against the State of Minnesota and the Minnesota

Supreme Court, Count Six for theft by swindle and Count Nine of the Complaint for the

intentional infliction of emotional distress, should also be dismissed as the Eleventh

---

[4]    See McMaster v. State of Minnesota, 819 F. Supp. 1429, 1434 (D. Minn. 1993), aff'd, 30 F.3d 976 (8th Cir. 1994) (holding that State of Minnesota was immune from RICO suit absent a waiver of its sovereign immunity).

[5]    In Count Three of the Complaint, Mashak alleged that all defendants worked to unlawfully obstruct justice and Count Four alleged a conspiracy to unlawfully obstruct justice.   The Court observes that these claims fail to state a claim because Mashak did not identify the statute or right that was violated.   See Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1093 (8th Cir. 2004 ("Section 1983 requires a claimant to identify the particular right that has been violated.") (citing DuBose v. Kelly, 187 F.3d 999, 1004 (8th Cir. 1999)).   Further, the claim of conspiracy to obstruct justice is futile where the predicate claim of obstruction of justice has been dismissed.   See Cook v. Tadros, 312 F.3d 386, 388-89 (8th Cir. 2002) (finding that in absence of an underlying constitutional violation there is no actionable conspiracy); Beach v. Minnesota, No. 03-CV-862 (MJD/JGL), 2003 WL 21488679 at *3 (D. Minn. June 25, 2003) ("Congress also has not abrogated state immunity by enacting 42 U.S.C. § 1985.").

[6]    Count Five of the Complaint is titled "Cruel and Unusual Punishment."   Assuming that this claim was brought as an Eighth Amendment claim under § 1983, it fails to state claim.   The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.   See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).   "[T]he protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners." Hott v. Hennepin County, Minnesota, 260 F.3d 901 (8th Cir. 2001).   Mashak is not incarcerated and was not incarcerated during the events that gave rise to this action and therefore, the Eighth Amendment does not apply.

Amendment bars pendant state law claims.  See Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000) ("This constitutional bar applies with equal force to pendant state law claims.") (citing Pennhurst, 465 U.S. at 120-21); see also DeGidio, 612 F. Supp. at 1389 (Eleventh Amendment applied to Section 1983 claims and pendent state-law tort claims).

In summary, this Court recommends granting the State defendants' motion to dismiss all claims against the State of Minnesota and the Minnesota Supreme Court without prejudice.[7]

## B.    Claims Against Judge Yunker and Judge Bloomquist

Mashak did not specify in what capacity he was suing Judges Yunker and Bloomquist.  Absent specification, it is presumed that defendants are being sued in their official capacities.  As explained by the Eighth Court, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999); see also Artis v. Francis Howell North Band Booster Ass'n., Inc., 161 F.3d 1178, 1182

---

[7]    As a general rule, when an action is dismissed for lack of subject matter jurisdiction, it is dismissed without prejudice, because the dismissal is not on the merits. See O'Grady v. Marathon County Child Support Agency, Civ. No. 05-2418 (JNE/JJG), 2006 WL 1715473 at *1 (D. Minn., June 19, 2006) (citing Frederiksen v. City of Lockport, 384 F.3d 437, 438-39 (7th Cir.2004).  "A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits."  Id. (quoting Frederiksen, 384 F.3d at 438); cf., Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims."); County of Mille Lacs v. Benjamin, 361 F.3d 460, 464 (8th Cir.2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent.")).

(8th Cir. 1998) ("[i]f the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999) ("if a complaint is silent, or only hints at the capacity in which a state officer is sued for monetary damages, the complaint should be interpreted as an official-capacity claim....[;] [i]n actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability") (citing Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir.1995), and Nix v. Norman, 879 F.2d 429, 431 (8th Cir.1989)).  Where Mashak has not expressly alleged that Judge Yunker and Judge Bloomquist are being sued in their individual capacities, the Court must find, based on the well-established Eighth Circuit law, that these defendants have been sued only in their official capacities.

The Eleventh Amendment bars suits for monetary damages against state officials in their official capacities, however, suits for prospective relief can be brought against state officials in their official capacities.[8]  See Hopkins v. Saunders, 199 F.3d 968, 977 (8th Cir. 1999) ("Eleventh Amendment protects a state official sued in his official capacity from all claims except for certain forms of prospective equitable relief"), cert. denied, 531 U.S. 873 (2000); Andrus, 197 F.3d at 955 ("Eleventh Amendment does not bar official-capacity claims for injunctive relief against state officials"); Nix, 879 F.2d at 432 ("[a] state agent . . . may be sued in his official capacity if the plaintiff merely seeks injunctive or prospective relief for a legally cognizable claim").  Here, Mashak has made

---

[8]     In the proposed amended complaint, Mashak seeks to assert claims against Judge Yunker and Judge Bloomquist in their individual capacities.  However, as discussed more fully in Section V.O, infra, claims against Judge Yunker and Judge Bloomquist are futile under the doctrine of judicial immunity.

no request for injunctive relief against any defendant, much less against Judge Yunker or Judge Bloomquist.[9]   Thus, for all of the same reasons discussed in the previous section, Counts One through Six and Count Nine against Judge Yunker and Judge Bloomquist in their official capacities should be dismissed as to any requests for monetary damages.[10]

### C.   Rooker-Feldman Doctrine

There is another basis for finding that this Court has no jurisdiction over Mashak's claims against the State defendants and that is the Rooker-Feldman doctrine.[11]  The Rooker-Feldman doctrine stands for the general principle that, with the

---

[9]     The only request for non-monetary relief by Mashak was that this Court vacate or expunge the harassment order obtained by Meeks and Meeks-Hull.  Apart from the fact the Court could not order such relief, (see next discussion on Rooker/Feldman doctrine), neither Judge Yunker nor Judge Bloomquist had any involvement with this order, and therefore, there is nothing this Court could order either of them to do.

[10]    At one point in the Complaint, Mashak asserted that Judge Yunker failed to provide him with an accommodation under the ADA.  See Complaint, ¶ 38.  The United States Supreme Court has held that Title II of that ADA, §§ 12131-12165, abrogates a state's Eleventh Amendment immunity, at least insofar "as it applies to the class of cases implicating the fundamental right of access to the courts."  Tennessee v. Lane, 541 U.S. 509, 533-34 (2004).  Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The term "public entity" includes any state or local government as well as any department, agency, special purpose district, or other instrumentality of a State or States or local government. 42 U.S.C. § 12131(1)(A) and (B).  However, Mashak cannot bring a Title II ADA claim against Judge Yunker because "Title II provides disabled individuals redress for discrimination by a 'public entity' [and][t]hat term, as it is defined within the statute, does not include individuals."  Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (quoting 42 U.S.C. § 12132).  As such, any ADA claim against Judge Yunker is futile against Judge Yunker.

[11]    The Rooker/Feldman doctrine is jurisdictional and may be raised by the Court sua sponte.  See, Bilello v. Kum & Go, LLC, 374 F.3d 656, 659 (8th Cir. 2004) ("However, when the record indicates jurisdiction may be lacking, we must consider the jurisdictional issue sua sponte.") (citing GMAC Commercial Credit LLC v. Dillard Dep't

exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction to review state court judicial decisions. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482–83 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923). "Such jurisdiction is vested only in the United States Supreme Court." Prince v. Arkansas Bd. of Exam'rs in Psychology, 380 F.3d 337, 340 (8th Cir. 2004) (citing Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000)). Rooker-Feldman bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corporation, 544 U.S. 280, 284 (2005). As such, a federal plaintiff who was unsuccessful in state court "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994) (citing Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416).

The Rooker-Feldman doctrine not only prohibits "straightforward appeals" of state judgments in federal court, but also federal review of matters "inextricably intertwined" with state court rulings. See Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003) (citing Lemonds, 222 F.3d at 492). "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent

Stores, Inc., 357 F.3d 827, 828 (8th Cir. 2004); Thomas v. Basham, 931 F.2d 521, 522-23 (8th Cir. 1991)); see also Johnson v. City of Shorewood, Minnesota, 360 F.3d 810, 818 (8th Cir. 2004)(concluding that the "Rooker/Feldman doctrine is jurisdictional, [and that] it may be raised sua sponte."), cert. denied, 543 U.S. 810, 125 S.Ct. 43, 160 L.Ed.2d 13 (2004), citing Lemonds v. St. Louis County, 222 F.3d 488, 492-93 (8th Cir. 2000), cert. denied sub nom., Halbman v. St. Louis County, 531 U.S. 1183 (2001).

that the state court wrongly decided the issue before it.'" Lemonds, 222 F.3d at 493 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)); see also Canal Capital Corp. v. Valley Pride Pack, Inc., 169 F.3d 508, 512 (8th Cir. 1999) ("A federal claim is inextricably intertwined with a state court judgment when 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'") (quoting Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997)).  Further, "[o]nce a party has litigated in state court . . . he cannot circumvent Rooker-Feldman by recasting his or her lawsuit as a [section] 1983 action." Prince, 380 F.3d at 341 (alteration original) (quotation marks omitted) (citing Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997)).

In short, the Rooker-Feldman doctrine applies in those situations where a claimant has sued and lost in state court and then commences an action in federal court seeking relief for an injury caused by the state court's decision.

The genesis of Mashak's claims against the State defendants arise out of the decisions various state court judges rendered in connection with a harassment restraining order sought by Meeks-Hull and issued by a state district court judge against Mashak, and in connection with the conciliation court action Mashak brought against Meeks-Hull and Hull and lost.

The facts underlying the decisions of the state district court judges are summarized in two different decisions issued by the Minnesota Court of Appeals within the last year.  See Mashak v. Meeks-Hull, et al., NO. A11-638, --- N.W.2d ----, 2012 WL 118316 (Minn. Ct. App. Jan. 17, 2012) ("conciliation court action"); Meeks-Hull v. Mashak, NO. A09-2337, 2011 WL 1466320 at *2-3 (Minn. Ct. App. April 19, 2011) ("harassment order action").

With regards to the harassment order action, the Minnesota Court of Appeals described the underlying facts as follows:

> Respondent [Meeks-Hull] worked for appellant [Mashak] at a repossession firm beginning in 2003. Respondent's husband, Michael Hull, testified that appellant screamed at respondent frequently during her employment, using cuss words and calling her names. Respondent eventually quit in December 2005 or January 2006, and a dispute arose between the parties about missing property. Appellant called respondent several times and sent her letters after she quit. About a week after she quit, respondent had a nervous breakdown. She was hospitalized in a psychiatric ward for one week and then spent two weeks in California with her mother.
>
> In January 2008, appellant initiated a suit against respondent in Anoka County conciliation court. Appellant claims that respondent avoided service of process for almost a year. In June 2008, appellant called respondent's husband's phone twice, about two weeks apart. Soon after these phone calls, respondent and her husband moved from Anoka County to Isanti County. At some point after moving, respondent heard from a third party that appellant had gone to her previous home. On December 11, 2008, respondent petitioned for an HRO against appellant, and the district court granted an ex parte temporary restraining order
>
> ***
>
> The district court granted an HRO that prohibited appellant from having contact with respondent, her husband, and their children for two years.

Id. at *1-2. Mashak moved for amended findings, which the district court denied, and the Court of Appeals reversed the decision of the district court and remanded the case back to the district court for proceedings consistent with the opinion of the court. Id. at *3.[12]

---

[12] Mashek acknowledged in his proposed amended complaint that the Minnesota Court of Appeals reversed the harassment restraining order and remanded the case back to the lower court. See Proposed Amended Complaint, ¶ 1426.

As for the conciliation court action, the Minnesota Court of Appeals described the facts bearing on this dispute as follows:

> This case originated in conciliation court in January 2008. Appellant claimed that respondents Dannette Meeks–Hull and Michael Hull owed him for a deficiency arising out of the repossession and sale of a 2000 Ford Excursion on which appellant was a secured creditor and cosigner. Appellant claimed that he paid $6,900 to the creditor, that he sold the vehicle for $5,500, and that respondents now owe him the difference of $1,400 plus approximately $1,700-$1,800 in attorney fees and other related expenses. The conciliation court found in favor of respondents, and appellant removed the case to district court.
>
> On February 9, 2011, the district court dismissed appellant's claim [on summary judgment], and, on reconsideration, the court affirmed this decision. This appeal followed.

2012 WL 118316 at *1.

In addition to challenging the dismissal of his case, Mashak appealed the district court's decision to deny his motion to amend the complaint and the decisions by the district court pertaining to allowing his motions to compel written and deposition discovery.  Id.  The Minnesota Court of Appeals found no error and affirmed the decisions of the district court.  Id.

In Counts One through Six and Nine and the supporting factual paragraphs, Mashak has claimed that in retaliation for exercising his First Amendment right to petition the government for redress of grievances, the State of Minnesota, the Minnesota Supreme Court, state court judges and in particular, Judges Yunker and Bloomquist, unlawfully obstructed justice by their handling of the suits between himself and defendants Meeks-Hull and Hull and as a result, he has never been able to clear his name or properly prosecute his cases.  See, e.g., Complaint, ¶¶ 15-17, 21, 23-25, 29-36, 39, 40, 71, 77, 82, 91-99, 204-206, 221, 222, 227, 228, 234, 235, 240, 241, 255.

Stated otherwise, all of his claims against the State defendants are premised on the fact that he did not succeed before the district courts concerning the conciliation court appeal or the issuance of the harassment restraining order.  But Rooker-Feldman does not permit Mashek to recast his failures at the state court level as constitutional claims or otherwise.  All of Mashak's claims against the State defendants are grounded on his assertions that the state district courts wrongly decided the issues before them.  Such claims amount to a direct challenge to the state court decisions and are precluded by the Rooker-Feldman doctrine.

This Court concludes that to the extent that the claims against Minnesota, the Minnesota Supreme Court, Judge Yunker and Judge Bloomquist are not barred by the Eleventh Amendment or absolute judicial immunity (see Section III.A-B, supra; V.O, infra), they are precluded by the Rooker-Feldman doctrine as being "inextricably intertwined" with state court rulings.

## IV.    LEE WOLFGRAM'S MOTION TO DISMISS

Mashak's allegations against Wolfgram span the period of October 28, 2010 through December 29, 2010 and govern Wolfgram's conduct in connection with the appeal of Mashak's conciliation court suit against Meeks and Meeks-Hull before Judge Yunker.  See Complaint, ¶¶ 87-99; Affidavit of Lee Roger Wolfgram, ¶ 2 [Docket No. 78].  In his motion to dismiss, Wolfgram argued that Mashak's First Amendment and Eighth Amendment cruel and unusual punishment claims under § 1983 should be dismissed as Wolfgram is not a state actor acting under the color of state law.  See Memorandum of Law in Support of Defendant Lee Wolfgram's Motion to Dismiss Plaintiffs' Complaint ("Wolfgram Mem."), pp. 5-7.  Wolfgram also asserted that Counts Two through Four cannot proceed because Mashak has failed to a state a RICO claim

against him.  Id., pp. 7-9.  As for Mashak's criminal allegations against him,[13] Wolfgram maintained that no criminal investigations or charges have brought against him involving this case, Mashak failed to plead any claims consistent with potential criminal activity, the accusations are purely imaginative, and lack any evidentiary foundation.  Id., p. 9. As for Mashak's claims for damages for physical and psychological distress, Wolfgram argued that Mashak failed to plead any facts in support of such damages and failed to plead any facts in support of his intentional infliction of emotional distress claim.[14]  Id., pp. 9-10.  Finally, Wolfgram asserted that Counts Ten through Seventeen, which bear on Mashak's state court case against Meeks and Meeks-Hull, should be dismissed because Wolfgram is not referenced in and played no part in any of the conduct or events described in those Counts.[15]  Id., p. 10.

Mashak opposed Wolfgram's motion to dismiss, asserted that his proposed amended complaint addressed any deficiency of facts.  See Plaintiffs' Responsive Memorandum of Law to Defendant Lee Wolfgram's Motion to be Dismissed from Case, pp. 1-3.

With regards to Count One, the only defendants mentioned are the state of Minnesota, the Minnesota Supreme Court, Hull and Meeks-Hull.  As such, the Court

---

[13]   Wolfgram did not specify which Counts bore on this argument.  The Court presumes they are Count Six, titled "Theft by Swindle," and Count Eight, titled "Extortion."

[14]   The Court assumes that Wolfgram is referencing Counts Seven and Nine.

[15]   Wolfgram attached two affidavits to his motion to dismiss.  However, Wolfgram clarified at the hearing on the motion that Court should treat the motion as a motion to dismiss and not as a motion for a summary judgment, and requested that the Court disregard the affidavits that he submitted in support of the motion.  Tr. 60.  The Court has done just that.

concludes that Count One of the Complaint does not apply to Wolfgram.  This Count should be dismissed with prejudice.

As to the RICO claim asserted in Count Two, this Court finds that Mashak has failed to adequately state a claim for relief.  The RICO Act, under 18 U.S.C. § 1962(b), provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

To state a claim for damages under RICO, a complaint must "show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Crest Const. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009), quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted)).

A RICO enterprise consists of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity."  18 U.S.C. § 1961(4).  "The enterprise does not have to have a hierarchy, chain of command, fixed roles, or even a method of making decisions. An association-in-fact enterprise need only have 'three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.'" Crest Constr. II, NO. 07-0728-CV-W-DGK, 2010 WL 3456690 at *3 (W.D. Mo. Aug. 27, 2010) (quoting Boyle v. United States, 129 S.Ct. 2237, 2243-2244 (2009)); see also Murrin v. Fischer, 07-CV-1295 (PJS/RLE), 2008 WL 540857 at *12 (D. Minn. Feb. 25, 2008) ("As defined by RICO, an enterprise has three (3) components: (1) a common or shared purpose; (2)

some continuity of structure and personnel; and (3) an ascertainable structure different from that inherent in a pattern of racketeering.") (citing United States v. Lee, 374 F.3d 637, 647 (8th Cir. 2004), cert. denied, 545 U.S. 1141 (2005); United States v. Kehoe, 310 F.3d 579, 586 (8th Cir. 2002), cert. denied, 538 U.S. 1048 (2003); McDonough v. National Home Insur. Co., 108 F.3d 174, 177 (8th Cir. 1997); United States v. Lemm, 680 F.2d 1193, 1198 (8th Cir. 1982), cert. denied, 459 U.S. 1110 (1983)).

In order to make out a "pattern of racketeering activity," 18 U.S.C. § 1961(5), requires a plaintiff to plead the existence of at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), and to further establish that those predicate acts manifest the elements of "continuity plus relationship." Murrin, 2008 WL 540857 at *12 (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 238-39 (1989)).

"Racketeering activity" refers to criminal activity and includes bribery and extortion, "which is chargeable under State law and punishable by imprisonment for more than one year;" and certain acts "indictable" under federal law. See 18 U.S.C. § 1961(1)(A), (B). "[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008) (citations omitted). To do this "a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the allege predicate acts threaten to extend into the future (open-ended continuity)." Id.; see also Murrin, 2008 WL 540857 at *12 ("Continuity can be either closed- or open-ended") (citing H.J. Inc, 492 U.S. at 241-42)). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time,"

although '[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.'" <u>Murrin</u>, 2008 WL 540857 at *12 (citing <u>H.J. Inc.</u>, 492 U.S. at 238-39; <u>United States v. Hively</u>, 437 F.3d 752, 761 (8th Cir. 2006) (noting that Courts have found that closed-ended continuity requires a scheme that lasts at least one year)).  "In contrast, open-ended continuity can be established by showing the existence of a specific threat that extends indefinitely into the future." <u>Id.</u> (citing <u>Lange v. Hocker</u>, 940 F.2d 359, 361 (8th Cir. 1991); <u>Hively</u>, 437 F.3d at 761). Thus, to establish open-ended continuity, the plaintiff must show "that the predicate acts themselves involve a distinct threat of long-term racketeering activity or that the predicate acts constitute a regular way of conducting an on-going legitimate business or a RICO enterprise." <u>Crest Constr. II</u>, 2010 WL 3456690 at *3.

Wolfgram submitted that Mashak's RICO claim fails as a matter of law because none of the conduct listed in 18 U.S.C. § 1961(1) regarding obstruction of justice pertains to this case.  Wolfgram Mem., p. 7.  In addition, Wolfgram claimed that Mashak failed to plead that the alleged association by Wolfgram and other defendants affected interstate or foreign commerce or the requisite pattern of racketeering activity, given that all of the claims against Wolfgram stem from one occurrence, Wolfgram's representation of Mashak in a conciliation appeal.  <u>Id.</u>, pp. 8-9.

Mashak's RICO claim against Wolfgram fails for several reasons.  First, he has failed to adequately plead any facts to support a claim of criminal activity by Wolfgram, or the existence of at least two predicate acts of racketeering activity.  <u>See</u> Complaint, ¶¶ 87-99.  While Count Six is entitled "Theft by Swindle," no facts were alleged to suggest that whatever money Mashak paid for Wolfgram's services amounted to a theft. Similarly, Mashak's claim of extortion in Count Eight does not state a claim for criminal

extortion under state law. <u>See</u> Minn. Stat. § 609.27 (making it unlawful to coerce someone to act against their will by threatening them with bodily harm; threatening the infliction of damage to property; threatening the infliction of an injury to a business, profession or trade; threatening to expose a secret; or threatening criminal charges).

Second, Mashek failed to allege any enterprise engaged in interstate or foreign commerce. Third, the Court finds no facts that suggest a pattern of racketeering activity given that all of the claims against Wolfgram stem from one transaction—the representation of Mashek in the underlying state court conciliation appeal. <u>See</u> <u>Handeen v. Lemaire</u>, 112 F.3d 1339, 1353 n. 19 (8th Cir. 1997) (quoting <u>Terry A.</u> <u>Lambert Plumbing, Inc. v. Western Sec. Bank</u>, 934 F.2d 976, 981 (8th Cir.1991) ("a single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim.")).

For all of these reasons, Wolfgram's motion to dismiss as to Count Two should be granted.

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." <u>Michaelis v. Nebraska State Bar Ass'n</u>., 717 F.2d 437, 438-39 (8th Cir. 1983). Nonetheless, when a complaint is so incomprehensible that it does not "even roughly approximat[e] a short and plain statement of the claim, ….[and when it does not appear that] even under the most liberal of standards, that the documents state a claim for which relief may be granted," dismissal with prejudice is appropriate. <u>See</u> <u>White v. United States</u>, 588 F.2d 650, 650 (8th Cir. 1978) (affirming dismissal of a complaint described by the district court as "a wholly incomprehensible compilation of unrelated phrases, diatribes and ramblings."); <u>Ikechi v. Verizon Wireless</u>, Civ. No. 10-

4554 (JNE/SER), 2011 WL 2118797 at *5, n.6 (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).  As discussed more fully in Section V.O, infra, none of the proposed amendments cure the deficiencies identified here.  Therefore, the Court recommends that the RICO Count be dismissed with prejudice as to Wolfgram.

In Count Three of the Complaint, titled "Obstruction of Justice," Mashak alleged that all defendants worked to unlawfully obstruct justice and Count Four alleges a conspiracy to unlawfully obstruct justice.  For the same reasons that this claim failed against the State defendants, it fails here against Wolfgram – Mashak has not identified any statute or right that was violated with regards to these claims.  As such, the Court concludes that Wolfgram's motion to dismiss should be granted as to Count Three and Four and the claims should be dismissed without prejudice.

Count Five of the Complaint, titled "Cruel and Unusual Punishment" claim must be dismissed.  The Eighth Amendment proscription against cruel and unusual punishment applies only to convicted prisoners.  Hott, 260 F.3d at 901.  Mashak was not imprisoned during the events alleged in his Complaint.  Wolfgram's motion to dismiss as to Count Five should be granted, and as the claim is futile, it should be dismissed with prejudice.

In Count Six of the Complaint, titled "Theft by Swindle," Mashak alleged Wolfgram induced him to pay money by falsely stating that he would represent Mashak to the best of his ability, when instead he participated in fixing Mashak's case against

his best interests.  Wolfgram presumed that Mashak was alleging that he had engaged in some sort of criminal activity (see Wolfgram Mem., p. 9); this Court presumes that the gravamen of this Count is fraud.[16]  Under either scenario, the claim is futile and must be dismissed.

Minn. Stat. § 609.52 makes it a criminal act to commit the following type of theft:

> obtains for the actor or another the possession, custody, or title to property of or performance of services by a third person by intentionally deceiving the third person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes without limitation:
>
> * * *
>
> (ii) a promise made with intent not to perform. Failure to perform is not evidence of intent not to perform unless corroborated by other substantial evidence;

Minn. Stat. § 609.52, subd. 2.   Under Minnesota law, a "criminal statute does not automatically give rise to a civil cause of action unless the statute expressly or by clear implication so provides."   Larson v. Dunn, 460 N.W.2d 39, 47 n. 4 (1990) (citing Nemec v. Brown, 150 Minn. 252, 184 N.W. 956 (1921); Miller v. Minneapolis Underwriters Ass'n, 226 Minn. 367, 33 N.W.2d 48 (1948)).   There is no express or implied language in Minn. Stat. § 609.52 affording a private cause of action for a violation of the statute.

To state a claim for common law fraud under Minnesota law, a plaintiff must prove: (1) there was a false representation by a party of a past or existing material fact; (2) that was made with knowledge of the falsity of the representation or made as of the

---

[16]   While Wolfgram did not raise this argument in his moving brief, the Court "has the power to sua sponte dismiss a complaint for failure to state a claim."  Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991) (quoting Mildfelt v. Circuit Court, 827 F.2d 343, 345 (8th Cir. 1987) (per curiam)); Hanson v. Sullivan, (NO. 3:91-706), 1992 WL 227610 at *3 (D. Minn. June 02, 1992) (dismissing suit sua sponte for failure to state a claim where it was obvious that the plaintiff could not prevail on the facts alleged).

party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of his or her reliance.  Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn.1986).  "In cases brought in federal court, Rule 9(b) applies to both common law and statutory fraud claims made under Minnesota law where the gravamen of the complaint is fraud."  Russo v. NCS Pearson, Inc., 462 F. Supp.2d 981, 1003 (D. Minn. 2006).  Pursuant to Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity."  In order to meet the particularity requirements of Rule 9(b), a complaint must:

> [P]lead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. This requirement is designed to enable defendants to respond "specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." The level of particularity required depends on, inter alia, the nature of the case and the relationship between the parties. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Rule 9(b) should be read "in harmony with the principles of notice pleading."

BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted).

Because the gravamen of the Complaint is that Wolfgram lied to Mashak in order to get his money, Rule 9(b) applies.  But the claim fails because Mashak did not set forth with particularity when these representations were made and a more specific recitation of the statements by Wolfgram, as opposed to a general allegation of a

misrepresentation.  More critically, however, the Court finds that the claim is futile and cannot be resurrected by more exact pleading because statements of opinion about conduct in the future ("I will represent you to the best of my ability.") are not actionable. See Liimatta v. v. & H Truck, Inc., Civ. No. 03–5112 (JNE/RLE), 2005 WL 2105497 at *4 (D. Minn. Aug. 30, 2005) ("A fraud claim cannot be based on predictions, opinions, or sales puffery.") (citing Dollar Travel Agency, Inc. v. Northwest Airlines, Inc., 354 N.W.2d 880, 883 (Minn. Ct. App. 1984)); see also Minnesota Forest Products, Inc. v. Ligna Machinery, Inc., 17 F. Supp.2d 892, 909 (D. Minn. 1998) ("In addition, fraudulent statements must be more than statements of opinion or puffing.") (citing Hollerman v. F.H. Peavey & Co., 269 Minn. 221, 228–29, 130 N.W.2d 534, 540 (1964)).

For all of these reasons, Mashak's theft by swindle claim against Wolfgram should be dismissed with prejudice.

In Count Seven of the Complaint, titled "Medical Expenses," Mashak seeks monetary damages for the medical expenses he has incurred resulting from Meeks-Hull and Meek's false allegations and the remaining defendants' attempts to prevent the false allegations from being exposed.  Id., ¶¶ 244, 245.  This is a claim for relief and does not state a separate cause of action.  It should be dismissed with prejudice.

As to Mashak's extortion claim in Count Eight of the Complaint, neither Minn. Stat. § 609.27 nor § 609.275 provides for a civil action of extortion.  Therefore, the extortion claim against Wolfgram should also be dismissed with prejudice.  See Milavetz, Gallop & Milavetz, P.A. v. Hill, NO. CX-98-140, 1998 WL 422229 at *2 (Minn. Ct. App., July 28, 1998) ("Because neither section 609.27 nor section 609.275 provides for a civil cause of action, the district court properly concluded the law firm could not maintain a civil claim against Hill for violation of the statute.").

35

In Count Nine of the Complaint, titled "Intentional Infliction of Emotional Distress," Mashak alleged that Hull and Meeks-Hull made false sex allegations to third parties that Mashak had sexually harassed them, made improper sexual advances and had told them he had sex with minors in the Philippines. See Complaint, ¶¶ 253, 254.  Mashak then claimed that Wolfgram and the remainder of the defendants terrorized Mashak by depriving him of the right to clear his name through the legal process, the actions were extreme, outrageous, intentional or reckless, and caused Mashak emotional distress. Id., ¶¶ 256-258.

"Under Minnesota law, the elements of intentional infliction of emotional distress are: (1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it caused emotional distress; and (4) the distress was severe." Hill v. Scott, 349 F.3d 1068, 1075 (8th Cir. 2003) (citing Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983)).  The conduct at issue "'must be extreme and outrageous, so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'"  Id. (quoting Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652-53 n. 3 (Minn. 1979)).  The emotional distress must be "so severe that no reasonable man could be expected to endure it." Hubbard, 330 N.W.2d at 439.

In this case, the conduct alleged as a matter of law cannot be deemed to be extreme and outrageous, or so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.  See, e.g., Langeslag v. KYMN Inc., 664 N.W.2d 860, 865 (Minn. 2003) ("Liability for intentional infliction of emotional distress does not extend to insults, indignities, threats, annoyances, petty oppressions or other trivialities."); Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App.1992), rev. denied

(Minn. Dec. 15, 1992) (concluding  that where the doctor  of a patient's spouse told the children's' pediatrician  about possible child abuse by the spouse in order to "get back" at her did not extreme or outrageous conduct); Minch Family Ltd. Partnership v. Buffalo-Red River Watershed Dist., Nos. A06-850, A06-1194, 2007 WL 93084 at *5 (Minn. Ct. App. Jan. 16, 2007) (dismissing an intentional infliction of emotional distress claim where the defendants humiliated the plaintiff at public meetings and encouraged others to do so, inconsistently enforced watershed-district rules to his detriment, and treated him as an outsider).

Further, Mashak has merely claimed that he suffered emotional distress and "legal abuse syndrome"[17] as a result of defendants' allegedly making misrepresentations about him and not allowing him to clear his name.  He has not alleged that he suffered the sort of severe stress that is necessary to state a claim for intentional infliction of emotional distress.  See, e.g., Besett v. Wadena County, Civ. No. 10–934 (JRT/LIB), 2010 WL 5439720 at *17 (D. Minn. Dec. 7, 2010) (gathering cases rejecting depression, a fear of answering door or telephone, impaired ability to trust, damaged relationships with children, vomiting, skin rashes, stomach disorders, high blood pressure, crying spells, avoidance of social interaction humiliation, embarrassment, insomnia, difficulty sleeping, anxiety, lightheadedness, and shortness of breath as sufficient to support a claim for intentional infliction of emotional distress); Eklund v. Vincent Brass & Aluminum Co., 351 N.W.2d 371, 379 (Minn. Ct. App. 1984) (dismissing a claim of intentional infliction of emotional distress where plaintiff suffered

---

[17]      The Court could find no reference to "legal abuse syndrome" in the *Diagnostic and Statistical Manual of Mental Disorders* (American Psychiatric Association 4th ed. text revision 2000), the medical treatise universally relied upon by medical providers to diagnosis mental and physical illnesses and conditions.

humiliation, mental distress, embarrassment, and depression). Accordingly, Wolfgram's motion to dismiss this count should be granted and the count be dismissed with prejudice.

In summary, the Court recommends that all claims against Wolfgram be dismissed with prejudice.

## V. MASHAK'S MOTION TO AMEND

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. See, e.g., Niagara of Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted). The Eighth Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-1 (8th Cir. 1996) (citing Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989); Chesnut v. St. Louis County, 656 F.2d 343, 349 (8th Cir. 1981)). Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

When, as here, futility is raised as a basis for opposing any proposed amendments to a complaint, the court must determine whether the proposed claims state a claim for relief at this stage of the case. See Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not

withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.) (citation and marks omitted); <u>In re Senior Cottages of Am., LLC</u>, 482 F.3d 997, 1001 (8th Cir. 2007) (To deny a motion to amend on the ground of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."); <u>United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa</u>, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim. . . ."), <u>cert</u>. <u>denied</u>, 536 U.S. 925 (2002).  Thus, "in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the <u>Twombly</u> pleading standard." <u>Zutz</u>, 601 F.3d at 850-51.

Where a proposed amended complaint contains "lengthy, irrelevant, and largely incomprehensible factual allegations, discussions of case law supposedly supporting claims, and argumentative responses directed at defendant's answer to the original petition," and fails to comply with Rule 8 of the Federal Rules of Civil Procedure, the pleading may also be rejected based on futility, prejudice or undue delay resulting from "the burdens of additional discovery and delay to the proceedings." <u>McAninch v. Wintermute</u>, 491 F.3d 759, 766-767 (8th Cir. 2007) (citations omitted).

In this case, Mashak seeks to expand his 23-page and 312-paragraph Complaint, to a 115-page amended complaint (with over 1538 single-spaced paragraphs), and to assert claims against more than 30 new parties (named and unnamed in the proposed caption), including the Federal Reserve System and Federal Reserve Bank, the Minnesota House and Senate, various state senators and state representatives, the former Chief of the Minnesota Supreme Court, the Minnesota Board of Responsibility, the Minnesota North Star TEA Party Patriots, various

individuals associated with Wright County, a doctor and Allina Hospitals, bankers associated with 1st National Bank of Anoka and Wells Fargo, the FBI, the Justice Department, and the children of Meeks-Hull.[18]  The pleading is full of repetition, diatribes and ramblings, it jumps around in order, and it lumps together a variety of disparate events, entities and persons that have no connection to each other.  It seeks to do away with "Obamacare," strike down Federal Reserve System, assert a claim for attempted murder or manslaughter, require the FBI and Department of Justice to conduct an investigation and prosecution at his behest, obtain reinstatement into a private organization, and reverse decisions of the United States Supreme Court.  Suffice it to say, it appears that Mashak now is seeking through the vehicle of an amended complaint to inject into this lawsuit every grievance he has with anyone who has affected his life.  In many instances, it is impossible to determine what Mashak is seeking, against whom, or why.

It is true that Mashak must set forth in his complaint sufficient facts to survive a motion for dismissal under <u>Iqbal</u> and <u>Twombly</u>, and when alleging fraud or misrepresentation, he must meet the heightened pleading requirements of Rule 9(b).  But that is not what he did.  As discussed more fully below, Mashak did not address, much less cure, the deficiencies in the Complaint that formed the basis for the State defendants' and Wolfgram's respective motions to dismiss.  Instead, he completely ignored the pleading requirements set forth by Rule 8(a)(2), which require <u>a short and</u>

---

[18]    This Court is addressing the proposed amended complaint Mashak submitted with his motion to amend and not the second proposed amended complaint Mashak filed on September 9, 2011, following the responses filed by the State defendants and Wolfgram.  The Court notes that this second version added an unhelpful "short and plain statement of claim" and additional inconsequential changes to the first proposed amended complaint.

plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2) (emphasis added); see also Gurman v. Metro Hous. & Redevelopment Auth., 2011 U.S. Dist. LEXIS 69977 at *3 (June 29, 2011) ("Under Fed. R. Civ. P. 8(a)(2), a complaint must include 'a short and plain statement of the claim showing that the pleader is entitled to relief . . . .' The words 'short and plain' are themselves short and plain, and they mean what they say: A complaint must be concise, and it must be clear. Rule 8 was not promulgated to provide helpful advice; it has the force of law, and it must be followed.").

The problems created by Mashak's proposed amended complaint are best described as follows:

> This Court has repeatedly criticized the filing of "kitchen-sink" or "shotgun" complaints — complaints in which a plaintiff brings every conceivable claim against every conceivable defendant.[19]  Such complaints are pernicious for many reasons. See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 981 (11th Cir. 2008) ("The unacceptable consequences of shotgun pleading are many."). For one thing, complaints like the one in this case unfairly burden defendants and courts. The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. In this case, for example, plaintiffs have essentially coughed up an

---

[19]    Riley v. Cordis Corp., 625 F. Supp. 2d 769, 780 n.5 (D. Minn. 2009); Hough v. Shakopee Pub. Sch., 608 F. Supp. 2d 1087, 1091-92 (D. Minn. 2009); Woods v. Xcel Energy, No. 06-CV-5014, 2008 U.S. Dist. LEXIS 57005, at *48, 2008 WL 2885983, at *16 (D. Minn. July 22, 2008); Randall v. Lady of Am. Franchise Corp., 532 F. Supp. 2d 1071, 1074 (D. Minn. 2007); M.P. ex rel. K.P. v. Indep. Sch. Dist. No. 721, No. 01-771, 2007 U.S. Dist. LEXIS 18874, at *7 n.2, 2007 WL 844688, at *3 n.2 (D. Minn. Mar. 16, 2007); Stellar-Mark, Inc. v. Advanced Polymer Tech. Corp., No. 05-2445, 2006 U.S. Dist. LEXIS 72535, at *1-2, 2006 WL 2860924, at *1 (D. Minn. Oct. 4, 2006); Fearing v. St. Paul Police Dep't, No. 02-4744, 2005 U.S. Dist. LEXIS 6785, at *20-21, 2005 WL 914733, at *7 (D. Minn. Apr. 20, 2005); Larson ex rel. Larson v. Indep. Sch. Dist. No. 361, No. 02-3611, 2004 U.S. Dist. LEXIS 3322, at *58-59, 2004 WL 422180, at *20 (D. Minn. Mar. 2, 2004); Bellecourt v. United States, 784 F. Supp. 623, 632-33 (D. Minn. 1992); Liggins v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990).

> unsightly hairball of factual and legal allegations, stepped to the side, and invited the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two.
>
> This is emphatically not the job of either a defendant or the Court. It is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them. By filing a patently improper complaint in this case — a complaint that is neither concise nor clear, and that is littered with frivolous allegations — plaintiffs have wasted the time and money of the defendants, almost all of whom are public agencies and public officials who serve the poor and disadvantaged. Plaintiffs have also wasted the time and resources of this Court.
>
> When judicial resources are wasted in dealing with improper complaints, the burden ultimately falls on the taxpayers, who fund the court system. And when judicial resources are diverted to dealing with improper complaints, the business of other litigants — litigants who have complied with the Federal Rules of Civil Procedure and who may have meritorious claims to be resolved — is needlessly delayed. That is true in any court, but it is especially true in the District of Minnesota, which is among the 4 or 5 busiest of the 94 federal judicial districts. See Powell v. I-Flow Corp., 711 F. Supp. 2d 1012, 1017 (D. Minn. 2010).

Gurman, 2011 U.S. Dist. LEXIS 69977 at *3-6.

If Mashak were permitted to proceed with the proposed amended complaint, the burdens this Court to pick through the morass would be untenable.  As such, the Court denies Mashak's motion to amend on the basis that the proposed amended complaint fails to comport with the pleading requirements of Rule 8(a)(2), and will cause undue delay and prejudice.  In addition, as set forth below, to the extent that the Court was able to comprehend the myriad of new "facts" and "claims" alleged in the proposed

amended complaint, the Court concludes they are futile because they fail to state claim for relief.

### A. Proposed Count One: Writ of Mandamus that the United States Supreme Court Interpretation of the Eleventh Amendment is Null and Void

Mashak has requested that this Court find that the United States Supreme Court's interpretation of the Eleventh Amendment is null and void regarding state sovereign immunity. See Proposed Amended Complaint, ¶¶ 1151-58. This Court assumes that Mashak is referencing the Supreme Court's decisions that under the Eleventh Amendment, federal courts lack subject matter jurisdiction over a claim against a state for damages when that state has not consented to the suit. See Kimmel, 528 U.S. at 72; Seminole Tribe of Fla., 517 U.S. at 64-65. However, this Court is bound by United States Supreme Court precedent. See Agnostini v. Felton, 521 U.S. 203, 237 (1997) ("If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions.") (citation omitted); see also Fond du Lac Band of Lake Superior Chippewa v. Frans, 649 F.3d 849, 852 (8th Cir. 2011) ("'Federal courts . . . are not free to limit Supreme Court opinions precisely to the facts of each case. Instead, federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings. . . .'") (quoting Jones v. St. Paul Cos., 495 F.3d 888, 893 (8th Cir. 2007), quoting City of Timber Lake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 557 (8th Cir. 1993)). As such, this Court finds that Mashak's motion to amend as it relates to Count One of the proposed amended complaint is denied as futile.

**B.**     **Proposed Count Two:  Writ of Mandamus Ordering that Citizens be Allowed the First Amendment Right of Petition of Redress of Grievances**

In Count Two of the proposed amended complaint, Mashak has requested a writ of mandamus ordering that citizens be allowed the First Amendment right of petition of redress of grievances, Mashak requested the following relief:

> 1160. Wherefore Plaintiff asks the Court to grant their Motion ordering the entire Minnesota Legislature to hear testimony and evidence of corruption in the Minnesota Judiciary;
>
> 1161. Or in the alternative, reduce the scope of that order to just the appropriate Minnesota House and Senate Judiciary Committees.

Proposed Amended Complaint, ¶¶ 1160-61.

The Supreme Court has long recognized an exception to Eleventh Amendment immunity permitting suits in federal court against state officials alleged to have been directly involved in violating the Constitution or federal law where the relief sought is only injunctive in nature.  See Ex Parte Young, Ex parte Young, 209 U.S. 123, 157 (1908).   However, while the Ex Parte Young doctrine may create an exception to Eleventh Amendment immunity with regard to injunctive relief against state officials, this doctrine has no application in suits against States and their instrumentalities, which are barred regardless of relief sought.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (citation omitted); see also Huidekoper v. Hadley, 177 F. 1 (8th Cir. 1910) (noting that a state legislature is a instrumentality of a state). Given that the injunctive relief is being sought against the Minnesota legislature and its

committees, the Court finds that the motion to amend as it relates to Count Two is futile and is denied.

### C.    Proposed Count Three: Finding that the Bill Commonly Known as Obamacare is Unconstitutional and Null and Void in its Entirety.

Mashak seeks a ruling from this Court that the bill commonly known as "Obamacare," otherwise known as the Patient Protection and Affordable Care Act, is unconstitutional and null and void in its entirety.  Proposed Amended Complaint, ¶ 1163.  The basis for this claim are Mashak's allegations that "conspirators tried to murder [him] by denying him medical care," and that "Government bureaucrats and elected officials again tried to murder him by delaying coverage under MinnCare," a state program similar to Obamacare.  Id., ¶¶ 1163-64.  Additionally, Mashak alleged that it is "likely that Government Bureaucrats and elected officials will use the denial of medical care to repress liberty and oppress and retaliate against citizens it considers political dissenters."  Id., ¶ 1167.  Mashak also claimed that Obamacare conflicts with several unspecified provisions of the Constitution and its amendments, and the Bill of Rights, the Federalist Papers and the Anti-Federalist Papers and is therefore, unconstitutional and should be struck down.  Id., ¶¶ 1169, 1172.

This claim is virtually incomprehensible, if for no other reason than this Court is at a loss to determine as against whom it is directed.  In any event, what is clear is that Mashak has no standing to assert this claim.  In order to bring an action under Article III of the Constitution, a plaintiff must allege an injury in fact that is "'(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'"  Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006) (quoting South Dakota Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 591 (8th Cir. 2003), quoting Lujan v. Defenders of Wildlife, 504

U.S. 555, 560 (1992)).   In this case, Mashak speculates that because unnamed defendant conspirators tried to murder him by denying him medical care, and delayed medical care under MinnCare, it is likely that he will be denied medical care under Obamacare to repress liberty and oppress and retaliate against citizens.   Mashak has alleged no injury to his person and only a hypothetical injury to alleged dissenters.   As such, he has failed to demonstrate Article III standing under Count Three of his proposed amended complaint.

The motion to amend as it relates to Count Three is denied as futile.

### D.   Proposed Count Four: Attempted Murder and/or Manslaughter; Serious Bodily Harm

According to Mashak, he suffered a setback to his health the day the I-35W bridge collapsed and then he sought follow-up health care at an Allina Medical Clinic. See Proposed Amended Complaint, ¶¶ 145-46.   Mashak alleged that proposed defendant Dr. Stewart Sahlberg ("Dr. Sahlberg") was instructed by unnamed bankers and unspecified defendants to delay or deny him medical treatment and that regardless of the reason for delaying or denying medical treatment, the actions of Dr. Sahlberg and Allina Hospitals were criminal and amounted to attempted murder.   Id.   In addition, Mashak alleged that he applied for medical assistance with Wright County and that at the direction of Wright County employees, the County delayed his coverage for two-and-half months, which resulted in damage to his heart by the time he received treatment.   Id., ¶¶ 244-248.   According to Mashak, this was punishment and amounted to an attempt to kill him.   Id., ¶ 147.   In Count Four, Mashak alleged that "defendants or the original bank conspiracy sent assassins to kill [him]."   Id., ¶ 1175.   Further, Mashak alleged that the State of Minnesota, Wright County and the Minnesota Supreme Court

instructed their employees to deny Mashak benefits under MinnesotaCare, Wright County did withhold medical coverage from him with the intent of causing his death, unnamed defendants advised Allina Medical Clinic and Dr. Sahlberg to deny medical care to plaintiff, and Allina Medical Clinic and Dr. Sahlberg did deny him medical care. Id., ¶¶ 1176-1179.

Under Minnesota law, a "criminal statute does not automatically give rise to a civil cause of action unless the statute expressly or by clear implication so provides." Larson v. Dunn, 460 N.W.2d 39, 47 n. 4 (1990) (citing Nemec v. Brown, 150 Minn. 252, 184 N.W. 956 (1921); Miller v. Minneapolis Underwriters Ass'n, 226 Minn. 367, 33 N.W.2d 48 (1948)). There are no express or implied causes of action under Minn. Stat. §§ 609.185-609.196, 609.20-609.205 for murder and manslaughter, including causing death by inflicting great bodily harm, or under Minn. Stat. § 609.17 for attempts of such crimes. As such, the motion to amend as it relates to Count Four is denied as futile.

**E.    Proposed Count Five:  Writ of Mandamus Ordering the FBI and the Justice Department to do a Full, Thorough and True Investigation and Prosecution of Witness Tampering and Death Threats**

As part of the writ of mandamus under Count Five, Mashak has requested that FBI and the Justice Department to do a full, thorough and true investigation and prosecution of witness tampering and death threats involving his person. See Proposed Amended Complaint, ¶¶ 145-46.

Pursuant to 28 U.S.C. § 1361:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.   In addition, Mashak claimed that under the All Writs Act, the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

To obtain mandamus relief, a party must establish that "(1) no other adequate means exist to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." Hollingsworth v. Perry, --- U.S. ----, ----, 130 S.Ct. 705, 710, 175 L.Ed.2d 657 (2010) (per curiam) (internal quotations, alteration, and citation omitted).

In this case, Mashak is asking that the Court require executive agencies, the FBI and the Justice Department, to do a full, thorough and true investigation and prosecution related to his person.  Even if the Court had the authority to issue a writ of mandamus to an executive agency, as opposed to employees of an executive agency as authorized by § 1361, the Court has no authority to compel discretionary acts such as an executive agency's decision to initiate an investigation or prosecution.  Lovoi v. U.S. Dept. of Justice, 679 F. Supp.2d 12, 14 (D.D.C. 2010) (citing Cox v. Sec'y of Labor, 739 F. Supp. 28, 30 (D.D.C. 1990), citing Dunlop v. Bachowski, 421 U.S. 560 (1974); Vaca v. Sipes, 386 U.S. 171, 182 (1967)); Gant v. F.B.I., 992 F. Supp. 846, 848 (S.D. W.Va. 1998) (concluding that no writ of mandamus will issue to compel FBI to perform discretionary responsibilities of investigating criminal violations); see also Morrow v. Meehan, NO. 06-4241, 2007 WL 4439467 at *2, 258 Fed. Appx. 492, 493-94 (3rd Cir. Dec. 19, 2007) ("District Court determined that because initiating a criminal prosecution is a discretionary function, Morrow cannot show that his right to a writ of mandamus is clear and indisputable. We agree. 'Where a matter is committed to

discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'") (quoting <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 36 (1980)). Given the discretionary nature of responsibilities of investigating and prosecuting criminal violations, Mashak's motion to amend as to Count Five seeking a writ of mandamus is denied as futile.

**F.     Proposed Count Six:  Writ of Mandamus Striking and Rendering Null and Void the Federal Reserve System Act of 1913 as Unconstitutional**

With regards proposed Count Six, Mashak alleged as follows:  Pursuant to Section 8 of the Constitution, only Congress has the authority to coin our country's money.  <u>See</u> Proposed Amended Complaint, ¶ 1188.  The Federal Reserve, is a privately owned bank, and it currently coins the nation's money instead of Congress. <u>Id.</u>, ¶ 1190.  The United States is required to acquire the money by giving the Federal Reserve bonds, which yield interest to the institution.  <u>Id.</u>, ¶¶ 1191-93.  Thus, the Federal Reserve receives a share of every dollar before it is ever placed in the hands of the Government or any private citizen, including Mashak, which amounts to unjust enrichment and slavery.  <u>Id.</u>, ¶¶ 1194-1202.  This arrangement results in a large amount of unearned money for private bankers, who use the money to subvert elected officials and the Government.  <u>Id.</u>, ¶¶ 1204-06.  Mashak further alleged that the United States Supreme Court has refused to declare the Federal Reserve Act unconstitutional and has asked that this Court strike down and render null and void the Act and to award him damages in excess of $100 million.  <u>Id.</u>, ¶¶ 1206-07.

In order to satisfy Article III's standing requirements, Mashak "must have (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct and (3) likely to be redressed by the proposed remedy."  <u>Starr v. Mandanici</u>, 152 F.3d 741 (8th

Cir. 1998) (citation omitted).  "The injury must be 'concrete and particularized,' not 'conjectural' or 'hypothetical,' and "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 & n. 1 (1992)).  "In other words, the injury must be beyond that 'shared in substantially equal measure by all or a large class of citizens.'" Id. (quoting Gladstone v. Village of Bellwood, 441 U.S. 91, 100 (1979) ("[A] litigant normally must assert an injury that is peculiar to himself [or herself] or to a distinct group of which he is a part. . . .") (citations omitted).  The alleged harm to Mashak by virtue of Federal Reserve is not an injury that is peculiar by himself, in that all citizens are allegedly affected by the Federal Reserve's alleged receipt of a dollar before any money is placed in the hands of the Government or any private citizen.

Moreover, if Mashak is correct that the United States Supreme Court has refused to declare the Federal Reserve Act unconstitutional,[20] then this Court has no authority to countermand the holdings of the Supreme Court.  See Section V.A, supra (citing Agnostini, 521 U.S. at 237; Fond du Lac Band of Lake Superior Chippewa, 649 F.3d at 852.)  As such, Mashak' motion to amend as it relates to proposed Count Six is denied as futile.

### G.   Proposed Count Seven:   Injunctive Relief Ordering Plaintiff and Elaine Phillipi Reinstated to Minnesota North Star TEA Party Patriots

Mashak alleged that in 2010, he co-founded and was the co-leader of the Minnesota North Star TEA Party Patriots ("NSTPP").  See Proposed Amended Complaint, ¶ 212.  During his involvement in NSTPP, Mashak took positions on various issues related to government, judicial reform, accountability and fiscal transparency, which from time to time were supported by others.  Id., ¶¶ 213-215, 219, 228-230, 232.

---

[20]   Mashak provided no citation to any Supreme Court cases for this statement.

According to Mashek, Minnesota State Senator Warren Limmer ("Limmer") requested that Randy Liebo ("Liebo"), a Republican Party operative, remove Mashak from the NSTPP, because of various positions he had advocated.   Id., ¶¶ 213, 216, 218. Specifically, Limmer told Liebo that no one in the legislature would work with NSTPP if Mashak was the chair of the organization.   Id., ¶ 221.   Also involved with removing Mashak from NSTPP were Walter Hudson, the President of NSTPP, Minnesota State Senator Amy Koch, and Larry Hance, who is Amy Koch's father.   Id., ¶¶ 42, 227, 228, 240, 241.   Mashak   further   asserted   that   defendants   Koch,   Limmer,   House Representative Steve Smith, House Representative Tim Mahoney and former State Senator Mea Moua unlawfully retaliated against Mashak for whistleblowing and exercising his right to petition the government for redress of grievances.   Id., ¶¶ 44-46, 239.   Mashak claimed that he and another unnamed party were ejected from the NSTPP without following its constitution, due process and Roberts Rules, and without being given any reasons for the expulsion or being allowed to present a defense.   Id., ¶ 234.   To this day, Mashak has not been provided with a list of charges or an opportunity to provide a defense.   Id., ¶ 235 ,

In proposed Count Seven, Mashak alleged that he and Elaine Phillippi of the NSTPP were ejected from the NSTPP without following its constitution, due process and Roberts Rules, and without being given any reasons for the expulsion, and others were denied admission into the NSTPP.   Id., ¶¶ 1209-1211.   Mashak further asserted that the "intervention of Government Defendants in having [him] ejected from NSTPP was retaliatory for [his] Whistleblowing and exercise of his 1st Amendment rights and qualified as predicated acts under Federal and State RICO laws." Id., ¶ 1212.   Mashak seeks injunctive relief from the NSTPP, including an order requiring himself and Elaine

Phillipi to be reinstated to the NSTPP and to allow certain other individuals and organizations to join the NSTPP or be on its Board, to correct a voting discrepancy issue, and to enforce business passed by the legitimate board of the NSTPP.  Id., ¶¶ 1213-1217.  Mashak also asked for in excess of $100,000,000 if NSTPP does not comply, and in excess of $10,000 if NSTP does comply.  Id., ¶¶ 1218, 1219.

For starters, this Court will not entertain any attempt to seek relief for other individuals who are not plaintiffs in this suit.  Moreover, it is unclear what cause of action Mashak is asserting against the NSTPP.  Mashak mentions that he was kicked out of the NSTPP without due process, against the constitution of the NSTPP, and Roberts Rules of Order.  Even assuming that Mashak is asserting a procedural due process claim under the Fourteenth Amendment, which he does not state, Mashak has no cause of action directly under the Constitution or its amendments.  See Azul-Pacifico, Inc., 973 F.2d at 705 ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").  In addition, Mashak did not allege how the NSTPP, a private actor, acted under color of state law.[21]  See Novotny v. Tripp County, S.D., NO. 10-3811, --- F.3d ----, 2011 WL 6306700 at *1  (8th Cir. Dec. 19, 2011) ("'To state a claim under [42 U.S.C. § 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right.'") (quoting Van Zee v. Hanson, 630 F.3d 1126, 1128 (8th Cir. 2011)).

---

[21]     This Court notes that a private party may be held liable under § 1983 only if it is a 'willful participant in joint activity with the State or its agents.'" Gibson v. Regions Financial Corp., 557 F.3d 842, 846 (8th Cir. 2009) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 941 (1982) (quotation omitted)).

For these reasons, proposed Count Seven does not state a viable claim for relief. Therefore, Mashak's motion to amend as to this Count is denied as futile.

### H.   Count Eight: "Unlawful Punishment and Retaliation for Plaintiff Mashak exercising Constitutional 1st Amendment Right to Petition the Government for Redress of Grievances

Count Eight of the proposed amended complaint is virtually identical to Count One of original Complaint.  Compare Proposed Amended Complaint, ¶¶ 1220-1228 with Complaint, ¶¶ 203-209.  The only defendants mentioned in this Count are the State of Minnesota, the Minnesota Courts, Meeks and Meeks-Hull.  As stated previously, the State of Minnesota and the Minnesota Supreme Court are immune from claims brought under § 1983.  See Section III.A, supra.  Therefore, the motion to Amend as it relates to proposed Count Eight is denied as to the Minnesota and the Minnesota Courts.  As to Meeks and Meeks-Hull, who have not entered an appearance in this case, the proposed amendment is moot.

### I.   Proposed Count Nine:  Cruel and Unusual Punishment.

The Court finds that proposed Count Nine, asserting cruel and unusual punishment, is the same as set forth in Count Five of the Complaint.  Compare Proposed Amended Complaint, ¶¶ 1229-1233 with Complaint, ¶¶ 233-236.  Thus, having already determined that the claim is futile, it is denied.

### J.   Proposed Count Ten:  Theft by Swindle

Count Ten of the proposed amended complaint for theft by swindle is virtually identical to Count Six of original Complaint.  Compare Proposed Amended Complaint, ¶¶ 1234-1240 with Complaint, ¶¶ 237-242.  Given that Mashak has not remedied the particularity deficiencies of his fraud allegations against Wolfgram, and the State of Minnesota and the Minnesota Supreme Court are immune from such a suit under the

Eleventh Amendment, Section III.A, <u>supra</u>, the motion to amend as to this claim is denied.

### K.    Proposed Count Eleven:  Medical Expenses

Count Eleven for medical expenses is essentially the same as Count Seven of the original Complaint. <u>Compare</u> Proposed Amended Complaint, ¶¶ 243-246 <u>with</u> Complaint, ¶¶ 1241-1245.  This claim is futile as it seeks relief as opposed to stating a viable cause of action.  The motion to amend is denied.

### L.    Proposed Count Twelve:  Extortion

Count Twelve for extortion is essentially the same as Count Eight of the original Complaint (<u>compare</u> Proposed Amended Complaint, ¶¶ 1220-1228 <u>with</u> Complaint, ¶¶ 247-251), except in the proposed amended complaint Mashak alleged that Wolfgram was aware that Mashak's financial situation was dire and that he could not pay another retainer to come up to speed on his case.  <u>See</u> Proposed Amended Complaint, ¶ 1248. In addition, Mashak alleged that the extortion was a predicate act under RICO.  <u>Id.</u>, ¶ 1251.  Because there is no civil cause of action for extortion, Section IV, <u>supra</u>, and this Court again finds that Mashak has failed to state a RICO claim, Section V.O, <u>infra</u>, the motion to amend as to this claim is denied as futile.

### M.    Proposed Count Thirteen:  Intentional Infliction of Emotional Distress

Count Thirteen is virtually identical to Count Nine of the original Complaint. <u>Compare</u> Proposed Amended Complaint, ¶¶ 1253-62 <u>with</u> Complaint, ¶¶ 252-60. Because this Court has already concluded that Mashak has failed to alleged viable claim for intentional infliction of emotional distress (Sections III.A-C, IV, <u>supra)</u>, the motion to amend as to this claim is denied as futile.

**N.**   **Proposed Counts Fourteen through Twenty-Two**

Counts Fourteen through Twenty-One are against Hull and Meeks-Hull for breach of fiduciary duty, tortious interference with business advantage, theft of trade secrets, intentional interference with contract, breach of contract, conversion and breach of non-compete agreement are the same as counts Ten, Eleven, Thirteen through Seventeen in the original Complaint, except that several of the counts asserted that the violations were predicate acts under RICO.  As this Court has again concluded that Mashak has failed to state a RICO claim, Section V.O, <u>infra</u>, the motion to amend as to these claims is denied.

Proposed Count 22 seeks punitive damages.  It is denied for several reasons. First, to the extent that it is directed against the State defendants and Wolgram, it cannot survive as Mashak's claims against them have not survived the motions to dismiss or his motion to amend the complaint.  To the extent that the proposed count is directed to Longrie, Meeks and Meeks-Hull, it cannot be included in the Complaint at this time.

> Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim.

Minn. Stat. § 549.191.

**O.    Proposed Count Twenty-Three: Violation of Federal and Minnesota RICO Statutes**

Within the proposed amended complaint is a section titled "Verified Complaint of Racketeering," alleging a violation for federal and Minnesota RICO statutes.[22]   The factual support for this claim is as follows:  Mashak filed an action against Hull and Meeks-Hull in the Tenth Judicial District of Minnesota.   See Proposed Amended Complaint, ¶ 1423.  The court in that action refused to schedule a hearing for more than 90 days, which was past the discovery and dispositive motion deadlines set by the court.  Id.  The judges also issued rulings against Mashak, while committing a "wide variety of acts of racketeering and corruption.  Id., ¶ 1424.   In addition, Meeks-Hull initiated a "bogus action" in response to his civil action against her, which was an abuse of process in the form of a bogus harassment restraining order.  Id., ¶ 1425.   There were many irregularities with the "bogus action" and the Minnesota Court of Appeals reversed the restraining order and remanded back to the lower court.  Id., ¶ 1426.  The "bogus action" was brought to conceal obstruction of justice and criminal violations by all defendants.  Id., ¶ 1427.  Because of the racketeering, Mashak had $20,000 stolen from him, damage to his business and damage to his health.  Id., ¶ 1428.  Defendants routinely violated the local rules for Minnesota and the Tenth District, the Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure, the Code of Judicial Conduct, civil statutes and criminal statutes.  Id., ¶ 1429.  The Courts of Minnesota and the Tenth District, along with their staffs operate a criminal enterprise.  Id., ¶ 1430. These defendants have directed judicial employees to violate the law for purpose of

---

[22]    The motion to amend to add a state RICO claim is denied as futile, given that Minnesota's RICO Act does not recognize a private cause of action.  See Ferris, Baker Watts, Inc. v. Deutsche Bank Securities Ltd., Nos. 02-3682, 02-4845, 2004 WL 2501563 at *3 (D. Minn. Nov. 05, 2004) (citing Minn. Stat. §§ 609.902, subd. 9, 609.911, subd. 1).

damaging Mashak and others.  Id., ¶ 1434.   Specifically, Mashak attempted to have Judge Yunker removed from his civil case, however Chief Judge Bloomquist refused to remove her from the case.   Id., ¶¶ 1437, 1438.   In addition, Judge Yunker refused to extend the scheduling order to allow discovery, depositions an amendment the complaint even though she refused to schedule a hearing for 90 days, which was after the discovery and dispositive motion deadline had passed.  Id., ¶ 1440.   Judge Yunker ruled against Mashak and denied his request for reconsideration.  Id., ¶¶ 1441, 1442.

In the harassment restraining order action brought by Meeks-Hull, Judge Anderson made a "bogus" finding and ignored the evidence and the rules of evidence. Id., ¶ 1444.  While the decision was reversed, the damage had already been done.  Id., ¶¶ 1445, 1446.   Upon information and belief, every state judge in Isanti and Sherburne Counties are participants in the racketeering enterprise.  Id., ¶ 1447.

Defendants knowingly devised or participated in a scheme to defraud Mashak and engaged in two or more predicate acts of racketeering, including matters not involving Mashak (i.e., cases dealing with other parties and election recounts). Id., ¶¶ 1454, 1455.  These racketeering activities included obstruction of justice, tampering with evidence, perjury, perjury, theft by deception, denial of his constitutional rights, ignoring the facts of law, citing to erroneous case law, engaging in simulated litigation, denial of discovery and an opportunity to amend his complaint, preclusion by his lawyers from presenting crucial evidence, refusal by Judge Yunker to set a deadline for discovery and dispositive motion deadline and refusal to have any legitimate motions heard, issuance of orders containing false statements and perjury, perjury by Meeks-Hull and Hull.  Id., ¶ 1458.   In addition, judges have obstructed justice by denying subpoenas, denying Mashak the ability to obtain testimony from others, perjuring themselves, concealing

documents, violating the law and rules, denying of valid motions, impeding his right to file motions, failing to recuse themselves, falsely claiming that documents were not provided to the court, improperly handling filings, ignoring emergency motions and giving Mashak false information. Id.

This racketeering activity was designed to retaliate against Mashak for his peaceful exercise of his right to petition the government for redress of grievances, including his failed attempts to provide testimony of corruption to the Minnesota Legislature and for resisting the judiciary's attempts to take away the right to vote for judges. Id., ¶ 1463.

The association of the defendants and entities constitutes an enterprise in-fact, which was established for committing illegal acts. Id., ¶¶ 1470, 1471.

To the extent that Mashak is asserting that the State of Minnesota or the Minnesota Court, as well as the Minnesota House, the Minnesota Senate, the Minnesota Board on Judicial Standards and the Minnesota Lawyers Professional Responsibility Board, were involved in the RICO enterprise, these state entities are immune from Mashak's claim under RICO pursuant to the Eleventh Amendment. See Section III.A, supra.

Likewise, to the extent Mashak is continuing to assert a RICO claim against Judge Yunker and Judge Bloomquist in their official capacities, such a claim is barred by the Eleventh Amendment. See Section III.B, supra. Further, while Mashak has asked for injunctive in the form of requiring defendants to cease their illegal conduct and to impose reasonable restrictions to prohibit future violations of the law, based on the allegations in the pleading, Judge Yunker and Judge Bloomquist are no longer involved in legal matters involving Mashak, making the request for injunctive relief moot.

To the extent that Mashak has now asserted claims against Judge Yunker and Judge Bloomquist in their individual capacities, the RICO claim against them is futile under the doctrine of judicial immunity.  Judges are completely immune from civil lawsuits based on claims of misconduct during the performance of their judicial functions.  See Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Stump v. Sparkman, 435 U.S. 349, 355-57 (1978); Mireles v. Waco, 502 U.S. 9, 11 (1991); Penn v. United States, 335 F.3d 786, 789 (8th Cir. 2003) (citation omitted).  Judicial immunity "protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."  Forrester v. White 484 U.S. 219, 225 (1988) (citation omitted). There are two exceptions to this doctrine: (1) if the judge is being sued for actions that were not taken in the judge's judicial capacity, and (2) if the judge is being sued for actions taken "in the complete absence of jurisdiction."  Mireles, 502 U.S. at 11-12.

In this case, Mashak is seeking to sue Judge Yunker and Judge Bloomquist based on actions taken by them in their capacity as a county district judge and a chief county district judge.  Against Judge Yunker, Mashak complained that she refused to extend the scheduling order to allow discovery, depositions and amend the complaint even though she refused to schedule a hearing for 90 days, which was after the discovery and dispositive motion deadline had passed.  See Proposed Amended Compliant, ¶¶ 564-567, 1423, 1440.  Mashak also complained that Judge Yunker ruled against him and denied his request for reconsideration. Id., ¶ 1441.  As to Judge Bloomquist, Mashak claimed that he, in his position as chief judge, refused to remove Judge Yunker from his civil case. Id., ¶¶ 552-559, 1437-38.

The actions, or inactions, alleged by Mashak against Judges Yunker and Bloomquist were all performed in their respective roles as judges concerning Mashak's

civil case against Hull and Meeks-Hull and are squarely within their jurisdictional authority. While Mashak believes that the activities of Judge Yunker and Judge Bloomquist obstructed justice, such allegations do not overcome the judicial immunity. See Mireles, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice."); Forrester, 484 U.S. at 227 ("An action taken by a judge in her capacity "does not become less judicial by virtue of an allegation of malice or corruption of motive."); Pierson, 386 U.S. at 554 ("immunity applies even when the judge is accused of acting maliciously and corruptly."); see generally, Moses v. Parwatikar, 813 F.2d 891, 892 (8th Cir. 1987); ("absolute immunity is not defeated by pleading a conspiracy.").

Because Mashak is attempting to sue Judge Yunker and Judge Bloomquist for predicate acts they allegedly performed as the judges relating to his civil cases, his RICO claims against them are barred by the doctrine of judicial immunity.

Mashak also appears to be asserting a RICO claim against Eric Magnuson, former Minnesota Supreme Court Chief Judge, and David Paul and Pat Burns with the Minnesota Board on Judicial Standards and the Minnesota Lawyers Professional Responsibility Board. See Proposed Amended Complaint, ¶¶ 1412, 1414. However, Mashak has failed to set forth any facts as to the predicate acts committed by these individuals. Mashak lumps all of these defendants together and makes conclusory claims of wrongful conduct and without any facts to support his claims of illegal conduct. See Proposed Amended Complaint, ¶¶ 275-79. This he cannot do. See Tully v. Bank of America, N.A., Civil No. 10–4734 (DWF/JSM), 2011 WL 1882665 at *6 (D. Minn. May 17, 2011) (citing Liggens v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990) ("Plaintiffs assert each of the causes of action against the Defendants generally, but do not otherwise specify which claims are asserted against any particular defendant, or which

specific claims each Plaintiff is asserting. Thus, the Bank Defendants, and the Court, are left to guess which Plaintiffs are asserting which claims against which Defendants. The Court concludes that such pleading is inadequate and that Rule 8 requires greater specificity than that found in Plaintiffs' Amended Complaint.")).

The other defendant specifically named as part of Mashak's "Verified Complaint of Racketeering" was Meeks-Hull, where he alleged that she filed a "bogus" action against him for a restraining order after being tipped off by an unspecified court that Mashak was filing a civil action against her. See Proposed Amended Complaint, ¶ 1443. Given the futility of the proposed amendments as to the other defendants, and to the extent that the Court were to interpret this action as the predicate act of obstruction of justice under 18 U.S.C. § 1961(1), the Court still finds this new RICO claim against Meeks-Hull to be futile. As pled, her involvement in the RICO claim is an enterprise is an association-in-fact between her and unnamed court officials. See Proposed Amended Complaint, ¶ 1443. A RICO enterprise must have an ascertainable structure distinct from the pattern of racketeering activity in that it must be shown that the enterprise would still exist were the predicate acts removed from the equation. See Crest Const. II, Inc., 660 F.3d at 355 (citation omitted). Here, the predicate act of Meeks-Hull, was that she filed a "bogus" action against him for a restraining order after being tipped off by an unspecified court that Mashak was filing a civil action against her. There is no allegation of another association between the Meeks-Hull and the courts. Her actions of filing her action were in Mashak's own words to circumvent his legitimate civil action against her and her husband, as opposed to being part of a larger pattern of racketeering activity.

Finally, and fatally, the thrust of the proposed RICO claim is to challenge and invalidate the decisions of the Minnesota courts bearing on the harassment order action and conciliation court action, the claim is barred by the Rooker-Feldman doctrine.  See Section III.C, supra.

For all of these reasons, the motion to amend as it relates to the RICO claim is denied.

### P.        Proposed Count Twenty Four:  Breach of Legal Duty

In Count Twenty-Four, Mashak alleged that a breach of legal duty permits damages when no cause of action is given in express terms, and allows him to seek a private cause of action for violation of criminal statutes and the criminal misconduct he has alleged.   See Proposed Amended Complaint, ¶ 1482.   The claim is incomprehensible.  In any event, where Mashak has failed to set forth which criminal statutes have been violated, the Court cannot determine the viability of the claim, particularly, where, as a general rule, criminal statutes do not create a private cause of action.  See, e.g., Thompson v. Thompson, 484 U.S. 174, 179 (1988) ("'[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'") (quoting Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 94 (1981)); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."); Larson, 460 N.W.2d at 47 n. 4 (finding that under Minnesota law, a "criminal statute does not automatically give rise to a civil cause of

action unless the statute expressly or by clear implication so provides.") (citations omitted).  Mashak's motion to amend as it relates to Count Twenty-Four is denied.

### Q.      Proposed Count Twenty Five:  Violation of Constitutional Rights

In Count Twenty-Five, Mashak alleged that defendants owed a constitutional duty to him and that the "action and inaction of Defendants" have violated his constitutional rights, including denial of an impartial judge, and accordingly have violated his right under the "bill of rights" and the Article of the Bill of Rights of the Minnesota Constitution.  See Proposed Amended Complaint, ¶¶ 1486-1489.  The Court cannot discern which of the multitude of defendants Mashak is referencing nor does he provide a short factual basis regarding their respective constitutional violations.  Further, to the extent that the claim is against the State defendants, it is barred by the Eleventh Amendment or judicial immunity, and to the extent the claim amounts to a challenge to the decisions of the state court judges, it is barred by the Rooker-Feldman doctrine. Mashak's motion to amend as it relates to Count Twenty-Five is denied.

### R.      Proposed Count Twenty Six: RICO

Count Twenty-Six of the proposed Amended Complaint, titled "Racketeering, Influence and Corrupt Organization," is essentially identical to Count Two of original Complaint.    See  Compare  Proposed  Amended  Complaint,  ¶¶  1490-1504  with Complaint, ¶¶ 210-223.   For the same reasons this Court rejected this claim in the Complaint, (see Sections III, IV, supra), and rejected the proposed amendment to the claim (see Section V.O, supra), Mashak's motion to amend as it relates to Count Twenty-Six is denied.

**S.**      **Proposed Counts Twenty Seven and Twenty Eight: Obstruction of Justice and Conspiracy to Object Justice**

Count Twenty Seven and Twenty-Eight of the proposed amended complaint are the nearly identical as Counts Three and Four of the Original Complaint.  Compare Proposed Amended Complaint, ¶¶ 1505-1513 with Complaint, ¶¶ 226-232.  The Court recommended dismissal of these claims against the State of Minnesota, the Minnesota Supreme Court, Judge Yunker, Judge Bloomquist and Wolfgram.  See Sections III, IV, supra.  The only material change is that proposed amended complaint asserts claims against Judge Yunker and Judge Bloomquist in their individual capacities.  Such claims are barred by the Rooker-Feldman doctrine and are futile under the doctrine of absolute judicial immunity.  See Sections III.C, V.O, supra.  As such, Mashak's motion to amend as it relates to Counts Twenty Seven and Twenty Eight is denied.

**T.**      **Proposed Count Twenty Nine: New Law**

In Count Twenty Nine, Mashak has asked the Court to extend, modify or reverse existing law or establish new law given that the judiciary is corrupt.  Mashak has not set forth what law he wants changed or created, much less the authority of the Court to do so.  Further, if the thrust of this claim is to invalidate the previous decisions of state court judges, the claim is barred by the Rooker-Feldman doctrine.  The motion to amend as it relates to Count Twenty Nine of the proposed amended complaint is denied.

**U.**      **Proposed Count Thirty**

Proposed Count Thirty is entitled "Criminal Statutes Repeatedly Violated in Defendants' Scheme(s) to Block, Punish and Retaliate against Whistleblower (and otherwise make good on previous threats made in partially successful attempt at

Witness Tampering) for Exposing High Level Corruption."  In it, Mashak "lumps" together a number of proposed "sub-claims" premised on federal statutes he claims were violated by defendants "to help the Court and all the Parties understand my legal theory and helps Plaintiff to round up the loose ends."  Sub-claims 1-8 quote language from criminal statutes 18 U.S.C. §§ 2, 3, 4, 111, 1505, 1510, 1512, and 1513, (none of which create a private cause of action), and then set out some commentary by Mashak which is incomprehensible and for the most part, refers to persons or conduct not part of his case.  Sub-claim 9 quotes language from the RICO Act, §§ 1961, 1962 and provides no other factual allegations.  Sub-claim 10 quotes the part of the language for 42 U.S.C § 1985 for a conspiracy to interfere with civil rights and alleged that Rodney Stich ("Stich") was hindered from investigating aviation disasters and criminal activity.  This claim has nothing to do with Mashak's case, Stich is not a plaintiff in this case, and Mashak cannot represent Stich.  Sub-claim 12 quotes the language for an action for neglect to prevent conspiracy under 42 U.S.C § 1986.  In it, Mashak asserted that federal judges, California judges, Department of Justice employees, members of Congress and others have obstructed justice, which resulted in continued aviation disasters and harm from other criminal activities that affected the American people and the security of the United States.

Suffice it to say, that none of the sub-claims state a viable claim for relief and therefore, Mashak's motion to amend as to Count Thirty is denied in its entirety as futile.

In summary, Mashak's proposed amended complaint violated every rule related to proper pleading.  It violated Rule 8(a) in that it was not short and plain.  It violated the prohibition against submitting a pleading that "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" or to

assert claims that are not warranted "by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). And it violated the requirements of <u>Twombly</u> and <u>Iqbal</u>. To state a legal cause of action on which relief can be granted, a complaint must set forth a statement of historical facts, which if true, would entitle the plaintiff to some legal remedy against the named defendants, based on some recognized legal principle or theory. <u>Martin v. Aubuchon</u>, 623 F.2d 1282, 1286 (8th Cir. 1986) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law.").

Where a proposed amended complaint is made up of sentence fragments and assertions based on legal phrases, doctrines and statutes that are strung together in a seemingly random fashion, and the pleading make claims that are either barred or state no cause of action, the pleading must be rejected. That is the case here. The motion to amend the Complaint is denied.

## VI.    MOTION FOR WRIT OF MANDAMUS

Mashak has moved for a Writ of Mandamus requiring the Minnesota legislature to allow Minnesota Citizens to exercise their Constitutional First Amendment right to petition the government for redress of grievances against judicial corruption by allowing Minnesota citizens to provide testimony and evidence to the entire Minnesota Legislature for up to five days before the end of this year's session and up to five days thereafter upon the request by five or more citizens. The State defendants have opposed this request on various grounds including that the Minnesota Legislature is not party to this action and Eleventh Amendment grounds. This Court agrees.

The Minnesota Legislature is not a party to this action and the motion to amend to add it as a defendant has been denied.   As stated previously, the Eleventh Amendment precludes suits against states for legal or equitable relief, without state consent and extends to department and agencies of a state.   Pennhurst, 465 U.S. 89, 100; Florida Dept. Of Health & Rehabilitative Servs. v. Florida Nursing Home Assn., 450 U.S. 147, 149 (1981).   This bar applies to suits for mandamus.   See State v. Jumel, 107 U.S. 711, 727 (1882).   Mashak has not provided this Court with any evidence or authority, nor can this Court find any, that establishes that the Minnesota Legislature has waived Eleventh Amendment immunity as to requests for mandamus under the All Writs Act, or from suit for violations under the First Amendment.   To the contrary, Minnesota has not waived its immunity from § 1983 claims, which is the vehicle used to bring claims for violations of the Constitution and its Amendments.

For all these reasons, the Court finds that Mashak's Motion for a Writ of Mandamus should be denied.

## VII.   MOTION FOR DEFAULT JUDGMENT

Mashak has filed a motion for default and summary judgment against Meeks-Hull, Hull and Longrie because none of them have not responded to the Complaint within the time allotted for them to do so under the rules.   Mashak seeks to have judgment entered against these defendants in the amount of $5.0 million dollars.

The Federal Rules of Civil Procedure provide that default or default judgment may be entered against a party who "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise."   Fed.

R. Civ. P. 55(a).  A motion for default judgment must be preceded by an entry of default by the clerk of court. See Fed. R. Civ. P. 55(a) and (b).[23]

---

[23]     Rule 55 of the Federal Rules of Civil Procedure states in relevant part:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Mashak has not sought an entry of default against these defendants with the Clerk of Court, and no such judicial determination has been made. Therefore, the motion for default and summary judgment is denied without prejudice until that time Mashak has obtained and entry of default against these defendants pursuant to Rule 55.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Motion to Dismiss of State Defendants [Docket No. 15] be **GRANTED** and that the Complaint be Dismissed without Prejudice;

2.     Mashak's Motion for Writ of Mandamus [Docket No. 23] be **DENIED**.

3.     Mashak's Motion for Default and Summary Judgment [Docket No. 56] be **DENIED** without prejudice

4.     Defendant Lee Wolfgram's Motion to Dismiss [Docket No. 75] be **GRANTED**. All counts in the Complaint should be dismissed with prejudice.

## ORDER

Mashak's Motion to Amend Complaint [Docket No. 115] is **DENIED**.


Dated:          January 25, 2012

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 8, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **February 8, 2012**.